UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HEMCHANDRA SHERTUKDE | : | CIVIL ACTION |
| | : | |
| VS. | : | NO. 3 02 CV 620 (MRK) |
| | : | |
| MTD PRODUCTS, INC. | : | NOVEMBER 4, 2003 |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL PAYMENT OF EXPERT FEES

### I. PRELIMINARY STATEMENT

This instant matter arises from an incident involving a Yard-Man snow thrower, which occurred on February 6, 2001 while the plaintiff, Hemchandra Shertukde, was in the process of using the snow thrower when the chute clogged with snow. Plaintiff alleges that while the engine of the snow thrower was on, but the auger was not moving, the plaintiff put his right hand in the chute to unclog the snow, at which time the blade of the auger caused the plaintiff severe injuries, including partial amputation of his right ring finger as well as an open distal fracture with nail bed injury of the right small finger. Complaint dated March 25, 2002, ¶ 5. Plaintiff instituted this action based on the Connecticut Products Liability Act against MTD Products, Inc, which manufactured, distributed and sold the snow thrower.

Plaintiff disclosed Mr. Leslie Wilder, P.E. as an expert witness. (See copy of Curriculum Vitae attached as Exhibit A). Defendant noticed the deposition of Mr. Leslie Wilder for September, 23, 2003; however, Mr. Wilder requires his deposition fee to be

prepaid. Specifically, Mr. Wilder's standard practice calls for pre-payment of three hours of

preparation time, a four-hour minimum fee for deposition testimony, and travel expenses. In

this case, this totals $2112.00. (See affidavit of Leslie Wilder attached as Exhibit B). The

defendant has refused to pre-pay Mr. Wilder's costs and expenses as requested and the

deposition has therefore not been conducted. The plaintiff now moves this Court to compel the

defendant to pay for Mr. Wilder's standard fees and expenses in advance of his deposition.

## II. LAW AND ARGUMENT

### A. THE PARTY TAKING THE DEPOSITION OF AN ADVERSE EXPERT WITNESS IS REQUIRED TO PAY A REASONABLE FEE IN ADVANCE OF THE DEPOSITION

The prevailing law is that the party who has noticed the deposition of an adverse expert

witness is required to pay the expert's reasonable fee in advance of the deposition. Delbrugge

v. State Farm Mutual Automobile Insurance Co., 2001 WL 1842317 (S.D.Ohio 2001)

(prepayment of a $1200.00 reasonable); Cabana v. Forcier, 200 F.R.D. 9 (D.Mass 2001)

(prepayment of six hours per day and six hours of preparation time reasonable); Harvey v.

Shultz, M.D., 2000 WL 33170885 (D.Kan. 2000) (reserving a four hour minimum for expert's

deposition is reasonable); Edin v. Paul Revere Life Insurance Co., 188 F.R.D. 543 (D.Ariz.

1999) (minimum number of hours for deposition is reasonable despite the fact actual deposition

lasted only one hour); In re "Agent Orange" Product Liability Litigation, 105 F.R.D. 577

2

(E.D.N.Y. 1985) (payment of expert fees in advance is reasonable) (Copies attached as Exhibits

C, D, E, F, and G).

In Harvey, the defendant sought to depose the plaintiff's expert, Steven Becker, M.D.,

in a medical malpractice action. Harvey, supra. Dr. Becker required a four-hour minimum for

his deposition at $500.00 per hour. Id. The court held that the four-hour minimum is

reasonable despite the fact that the actual deposition lasted only two hours. Id. The court

reasoned that since the deposition was scheduled for an indefinite duration and Dr. Becker

would presumably experience a loss of revenue by "blocking out" a half day, a four hour

minimum at $500.00 per hour is a reasonable fee. Id.

In this case, Leslie Wilder, P.E. requires a four-hour minimum fee for his deposition

testimony. Mr. Wilder must "block out" a half day of his time. This practice is customary and

consistent with that of other experts in the field. He will experience a loss of revenue for this

"block" since he will not be able to conduct other work and schedule other appointments. (See

affidavit of Leslie Wilder attached as Exhibit B). Therefore, a four-hour minimum regarding

his deposition testimony is reasonable since Mr. Wilder will have to forgo other opportunities

for fee-generating activities during the half-day that his deposition is scheduled.

3

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE., SUITE 221•WEST HARTFORD, CT 06119-1544•(860) 233-8251•JURIS NO. 52776

**B.     THE PARTY TAKING THE DEPOSITION OF AN ADVERSE EXPERT IS REQUIRED TO BEAR THE COSTS FOR THE EXPERT'S PREPARATION TIME AND TRAVEL EXPENSES IN ADVANCE OF THE DEPOSITION**

Federal case law has also held that the party who has noticed the deposition of an adverse expert witness is required to pay for the expert's time spent preparing for that deposition as well as the expert's travel expenses in advance of the deposition. Cabana, supra. (payment of preparation time in advance of deposition is reasonable); In re "Agent Orange" Product Liability Litigation, supra. (payment of expenses and travel time in advance of deposition is reasonable).

In In re "Agent Orange" Product Liability Litigation, the defendant chemical companies, involved in class action suits, were ordered to produce their three expert witnesses so that the plaintiff may depose them. Id. The court held that the plaintiff, the party noticing the deposition, must pay the experts a reasonable fee in advance based on the experts' normal rates. Id. (emphasis added). In addition, the court noted that the advanced payment for the experts' fee included expenses, deposition testimony, and travel time. Id.

In this case, Leslie Wilder requires three hours of preparation time at his hourly rate of $300.00. The three hours of preparation is reasonable in light of the nature of the case. Mr. Wilder must prepare for his deposition in order to respond to questioning regarding the snow thrower at issue and the existing safety precautions and standards applicable to the snow

4

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE., SUITE 221 • WEST HARTFORD, CT 06119-1544 • (860) 233-8251 • JURIS NO. 52776

thrower. "Time reasonably necessary to refresh the expert's memory regarding the material reviewed and the opinions reached" is within a reasonable expert's fee. <u>Collins v. Village of Woodbridge</u>, 197 F.R.D. 354, 358 (N.D.Ill. 1999). Therefore, payment for three hours of preparation time is reasonable.

## III. CONCLUSION

For these reasons, the plaintiff's Motion To Compel Payment Of Expert Fees should be granted and the defendant should be required to pay plaintiff's expert, Leslie Wilder, P.E., in the amount of $2112.00 in advance of his deposition.

PLAINTIFF:  Hemchandra Shertukde


By_____

      Marc H. Vidone
      Federal Bar #ct22741
      Sack, Spector & Karsten
      836 Farmington Avenue
      West Hartford, CT  06119
      (203) 233-8251
      mvidone@sackspec.com
      His Attorney

**SACK, SPECTOR AND KARSTEN, LLP** • *ATTORNEYS AT LAW*
836 FARMINGTON AVE., SUITE 221•WEST HARTFORD, CT 06119-1544•(860) 233-8251•JURIS NO. 52776

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed on this _4Th_ day of November, 2003, to the following counsel of record:

John J. Bogdanski, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114

David W. Herrington, Esq.
Wegman, Hessler & Vanderburg
6055 Rockside Woods Boulevard
Cleveland, OH 44131-2302

Marc H. Vidone

6

**LESLIE N. WILDER, P.E.**                                      203/255-8880
150 Jennie Lane • Fairfield, CT 06824

**Professional:**     B.S.   Mechanical Engineering   - Columbia University   1956
                      M.S.   Engineering Mechanics    - Stanford University    1957
                      M.S.   Electrical Engineering   - New York University   1959
                      Licensed Professional Engineer  - New York, California, Connecticut
                      Board Certified Diplomate Forensic Engineer
                      Board Certified Professional Ergonomist
                      Fourteen patents granted.

                      • American Society of Mechanical Engineers
                      • National Society of Professional Engineers
                      • National Academy of Forensic Engineers
                      • Human Factors and Ergonomics Society
                      • Tau Beta Pi Engineering Honor Society
                      • American Society for Testing & Materials
                      • Society of Automotive Engineers
                      • International Society for Skiing Safety

**Services:**         • Product Liability Analysis    • Alternative Product Designs
                      • Expert Testimony              • Engineering Consultation
                      • Accident Reconstruction       • Product Testing

**Expertise:**        • Mechanical Engineering        • Product design
                      • Electrical Engineering        • Failure analysis
                      • Human Factors/Ergonomics      • Safety
                      • Cumulative Trauma Disorders   • Manufacturing

**Product**           • mowers and garden equipment
**Knowledge:**        • snow throwers
**(partial)**         • skis, boots and bindings
                      • bicycles
                      • sports and recreational products and equipment
                      • ladders, chairs and stools
                      • power and hand tools, shop equipment
                      • industrial and production machinery
                      • vehicles, seat belts and brakes
                      • automatic doors and mechanisms
                      • appliances, switches and electromechanical devices

**Industry Experience:**
1983-          <u>President</u>
present        SABON INDUSTRIES, INC.                    Fairfield, Connecticut
               Designed and manufactured ergonomic computer accessories.
               Consulting services in engineering, human factors, product development
               and marketing for Stanley Tools, ATT, and other industrial firms.  Forensic
               consulting, product analyses and expert witness services for the legal
               profession and insurance industry.

LESLIE N. WILDER

<span style="float:right">page 2</span>

1986-90     <u>Vice President and General Manager</u>
THE HOPP PRESS, INC.                              Newark, New Jersey
Responsible for product development, manufacturing, sales, marketing, and
administration.  Products include product identification and pricing systems.

1982-83     <u>Executive Vice President</u>
MECHTRONICS CORPORATION                    Stamford, Connecticut
Responsible for product development, manufacturing and administration for
this manufacturer of specialized mechanical and electromechanical point-
of-purchase displays.

1977-82     <u>Director of Engineering, Leisure Products</u>
AMF INCORPORATED                              White Plains, New York
Provided technical and business guidance to the $1 billion leisure and
electrical divisions.  Responsible for product development, engineering and
program analyses.  Reviewed and monitored over 100 engineering and
product development programs annually.  Coordinated domestic and
foreign technical resources. Staff engineering responsibility for:

- Lawn and Garden lawn mowers and tractors
- Wheel Goods bicycles and mopeds
- Tyrolia ski bindings
- Head tennis racquets and skis
- Potter and Brumfield relays and switches
- Paragon timers and circuit protectors
- American Athletic and Whitely exercise equipment
- Hatteras, Sunfish and other boats
- Harley Davidson motorcycles

1968-77     <u>Vice President Research and Development</u>
DICTAPHONE CORPORATION                          Rye, New York
Responsible for all new product development and other engineering
activities.  Established and managed the engineering and technical staff. In
less than 5 years, new products developed accounted for 90% of profits.

1965-68     <u>Manager of Research and Development</u>
ICORE INDUSTRIES                             Sunnyvale, California
Engineering development responsibility for high speed, high precision,
production-line inspection, weighing and control equipment. These products
utilized mechanical, electronic and optical technologies and were used by
companies such as General Mills and Proctor and Gamble.

1964-65     <u>Research Specialist</u>
AUTONETICS/NORTH AMERICAN AVIATION            Anaheim, California
Planned, coordinated and scheduled complex avionics systems programs.

1957-64     <u>Member of Technical Staff</u>
BELL TELEPHONE LABORATORIES     Murray Hill and Holmdel, New Jersey
Designed mechanical, electromechanical and electronic devices and equipment.
Developed and patented the Bell System TRIMLINE telephone.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

HEMCHANDRA SHERTUKDE            :    CIVIL ACTION
                                :
VS.                             :    NO. 3 02 CV 620 (MRK)
                                :
MTD PRODUCTS, INC.              :    OCTOBER 30, 2003

**<u>AFFIDAVIT OF LESLIE N. WILDER, P.E.</u>**

STATE OF CONNECTICUT)
                     )              October 30, 2003
COUNTY OF FAIRFIELD  )

The undersigned, being duly sworn, deposes and says that:

1. I am over age 18 and believe in the obligation of an oath.

2. I am President of Sabon Industries, Inc., which, in part, is engaged in the business of consulting and providing forensic engineering services involving product development and accident investigation including snow thrower accidents.

3. I have been designated as an expert trial witness by the plaintiff in the above-captioned action, and, as such, am familiar with the facts stated herein of my personal knowledge.

4. My deposition was noticed by the defendant on September 23, 2003.

5. Prior to my attendance at my deposition, I require prepayment of my fee associated with the deposition.

6. The prepayment of my fee includes a four-hour minimum fee for deposition testimony at $300.00 per hour, three hours of preparation time at $300.00 per hour, and $12.00 for travel expenses.

7. In accordance with my usual practice and that of other experts in the industry, I booked a half-day for my deposition setting aside four hours since I will be precluded from

conducting other work and scheduling other appointments for this time. It is customary in this industry for experts to block off a minimum number of hours for their deposition testimony.

8. In order to properly prepare for my deposition, and in view of the complexity of this case, it is necessary for me to set aside three hours of preparation time to review the video/photographs of the inspection, to analyze the applicable standards, prior reports, and materials, and to engage in engineering analysis.

9. My bill in connection with this deposition is for a total of $2112.00. This includes a total of 7 hours of time at my usual rate for this type of work of $300.00 per hour and $12.00 for travel expenses.

10. My hourly fee is within the range of fees charged by other experts in this field with comparable qualifications to mine.

_____
LESLIE N. WILDER

Subscribed and sworn to before me this 30 day of October , 2003.

Notary Public Patricia McGallagher

My Commission expires on: 10-31-04

_____
Notary Public

Not Reported in F.Supp.2d
(Cite as: 2001 WL 1842317 (S.D.Ohio))

Only the Westlaw citation is currently available.

United States District Court, S.D. Ohio, Eastern
Division.

Carrie A. DELBRUGGE, Plaintiff,
v.
STATE FARM MUTUAL AUTOMOBILE
INSURANCE CO., Defendant.

No. Civ.A.2:99-CV-1301.

May 7, 2001.

OPINION AND ORDER

KING, Magistrate J.

*1 Plaintiff in this diversity action seeks recovery of underinsured motorist benefits in connection with injuries allegedly sustained by her in a motor vehicle accident. In November 1999, William Hennessey, M.D., a specialist in physical medicine and rehabilitation, *Curriculum Vitae of William Hennessey,* attached to *Defendant's Expert Disclosure,* performed a medical evaluation of the plaintiff at the request of the defendant. Plaintiff noticed Dr. Hennessey's deposition for December 18, 2000. *Notice of Deposition Duces Tecum* (December 4, 2000). This matter is now before the Court on plaintiff's January 10, 2001 motion to fix an expert fee in connection with her deposition of Dr. Hennessey. Defendant has filed a memorandum *contra* the motion.

Apparently, Dr. Hennessey advised plaintiff's counsel, subsequent to the notice of deposition but before the date of the deposition, that he regularly charges "$1200.00 fee. Prepayment is required." *Billing Invoice,* attached to *Memorandum in Support of Motion to Fix Expert Fee.* The fee schedule indicates that Dr. Hennessey's fee is "$1200.00 per hour for oral deposition, ..." although he also charges a fee of "$1500.00 for one half-day of live testimony." *Id.* The $1200 fee must be prepaid. Half of the fee will be forfeited if the deposition is cancelled or rescheduled on less than two weeks' notice; all of the fee will be forfeited if the deposition is cancelled or rescheduled on less than one week's notice. *Id.* Contending that these terms are unreasonable and excessive, plaintiff asks that this Court fix an appropriate fee for Dr. Hennessey's deposition.

Rule 26(b)(4)(C) of the Federal Rules of Civil Procedure provides:

Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision; and (ii) with respect to discovery obtained under subdivision (b)(4)(B) of this rule the court shall require the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

A party seeking discovery of an opponent's expert witness must pay that expert a reasonable fee unless manifest injustice would result. *United States v. Twin Falls,* 806 F.2d 862 (9 superth Cir.1986), *cert. denied,* 482 U.S. 914 (1987); *Goldwater v. Postmaster General of the United States,* 136 F.R.D. 337, 339 (D.Conn.1991). What fee is reasonable falls within the discretion of the Court. *Jochins v. Isuzu Motors Ltd.,* 141 F.R.D. 493, 495 (S.C.Iowa 1992); *Hurst v. United States,* 123 F.R.D. 319, 321 (D .S.D.1988). "Certainly, a reasonable fee would include compensation for the expert's time during a deposition." 6 Moore's Federal Practice ¶ 26.80[3] (Matthew Bender 3 superrd Ed.). In determining an appropriate fee, a court should consider the education and expertise of the expert, the prevailing rates for similar experts and the complexity of the information sought. *Id.*

*2 Plaintiff does not dispute Dr. Hennessey's qualifications. Both parties refer, but without any evidentiary support whatsoever, to fees charged by other assertedly comparable professionals. They apparently agree that plaintiff's own treating physician charges $1000.00 minimum for the first two and one-half hours of deposition and $400.00 per hour thereafter.

In this context, Dr. Hennessey's fee appears to be only somewhat excessive. The Court rejects, as remote both in time and place, plaintiff's suggested rate of $250.00 per hour, as established more than one year ago by the Court of Common Pleas for Tuscarawas County, Ohio. The Court will authorize a fee of $1200.00 for a deposition of Dr. Hennessey lasting up to two and one-half hours. Thereafter, Dr. Hennessey may charge a fee of $600.00 per hour. Furthermore, the Court concludes that Dr. Hennessey's cancellation fees are not unreasonable.

IT IS SO ORDERED.

2001 WL 1842317 (S.D.Ohio)

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

200 F.R.D. 9
49 Fed.R.Serv.3d 382
(Cite as: 200 F.R.D. 9)

United States District Court,
D. Massachusetts.

**Bertrand CABANA, Plaintiff,**
v.
**Keith L. FORCIER, KNA Trucking Co. Inc., Dart
Trucking Co., Inc., Ensco, Inc.,
Defendants.**

**No. Civ. A. 99-40071-NMG.**

March 30, 2001.

 Truck driver who worked as independent contractor brought suit against truck leasing business and one of its clients, seeking to damages for injuries allegedly caused by exposure to hazardous waste. On various pretrial motions, the District Court, Gorton, J., held that: (1) plaintiff would be required to submit to a mental examination, including psychological testing, by defendants' expert; (2) plaintiff's attorney would not be permitted to attend mental examination of his client during administration of formal neuropsychological tests by defendants' expert; (3) defendants would be allowed to add counterclaims for breach of contract; (4) scheduling order would not be modified to allow plaintiff to produce a third safety expert to testify with respect to duties imposed by regulation promulgated under the Occupational Safety and Health Act (OSHA); and (5) plaintiff would be required to pay defendant's reasonable expenses incurred in bringing motion to compel plaintiff's expert to answer deposition questions.

 So ordered.

### West Headnotes

**[1] Federal Civil Procedure ☞1654**
170Ak1654

 The pleadings alone are sufficient to satisfy the burden of showing the necessity of a physical or mental examination when a plaintiff in a negligence action asserts mental or physical injury. Fed.Rules Civ.Proc.Rule 35(a), 28 U.S.C.A.

**[2] Federal Civil Procedure ☞1654**
170Ak1654

 Plaintiff in negligence suit would be required to submit to a mental examination, including psychological testing, by defendants' expert, a neuropsychologist, where plaintiff's clinical neuropsychologist submitted report diagnosing him with "multiple chemical sensitivity" and "cognitive deficits and depression" as a result of his exposure to hazardous waste while working for the defendants, those putting his mental condition "in controversy." Fed.Rules Civ.Proc.Rule 35(a), 28 U.S.C.A.

**[3] Federal Civil Procedure ☞1651**
170Ak1651

 Plaintiff's attorney would not be permitted to attend mental examination of his client during administration of formal neuropsychological tests by defendants' neuropsychologist. Fed.Rules Civ.Proc.Rule 35, 28 U.S.C.A.

**[4] Federal Civil Procedure ☞845**
170Ak845

**[4] Federal Civil Procedure ☞847**
170Ak847

 Defendants would be allowed to amend their answers in negligence suit to add counterclaims for breach of contract, notwithstanding that the proposed counterclaims were not timely, having been filed approximately six months after the answers, where requested amendments would not result in undue delay or prejudice to plaintiff because the new counterclaims arose out of the same facts that formed the basis of plaintiff's claims. Fed.Rules Civ.Proc.Rule 13(f), 28 U.S.C.A.

**[5] Federal Civil Procedure ☞843**
170Ak843

**[5] Federal Civil Procedure ☞851**
170Ak851

 Plaintiff would be allowed to amend complaint to supplement count with the basis for his calculation of punitive damages under the Massachusetts Consumer Protection Act, despite defendant's claim that amendment was futile since there was an employer-employee relationship between defendant and plaintiff precluding an unfair and deceptive practice claim, as there was a possibility that plaintiff was not an employee of defendant. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.; M.G.L.A. c. 93A, § 11.

**[6] Federal Civil Procedure ☞1935.1**
170Ak1935.1

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Scheduling order would not be modified to allow plaintiff to produce a third safety expert to testify with respect to duties imposed by regulation promulgated under the Occupational Safety and Health Act (OSHA), where there was no indication that proposed expert's testimony would not be duplicative of the testimony of plaintiff's two other experts. Occupational Safety and Health Act of 1970, § 2 et seq., 29 U.S.C.A. § 651 et seq.; Fed.Rules Civ.Proc.Rule 16(b), 28 U.S.C.A.

**[7] Federal Civil Procedure ☜1333**
170Ak1333

In determining whether an expert deponent's fee is reasonable, following factors may be considered: 1) the expert's area of expertise, 2) the expert's necessary training and education, 3) the prevailing rates for comparable expert witnesses, 4) the nature, quality and complexity of the discovery provided, 5) the cost of living in the relevant community, 6) the fee being charged by the expert to the party who retained him, 7) fees traditionally charged by the expert on related matters, and 8) any other factor likely to be of assistance to the court in balancing the interests implicated by discovery rule. Fed.Rules Civ.Proc.Rule 26(b)(4)(C), 28 U.S.C.A.

**[8] Federal Civil Procedure ☜1333**
170Ak1333

Requested expert witness fees of $375 per hour times an 8 hour per day minimum for deposition were unconscionable, notwithstanding contention that witness was nationally recognized expert in environmental and occupational exposure; rather, expert would be reimbursed for deposition time at her hourly rate of $375 but her eight hours per day minimum would be reduced to six hours. Fed.Rules Civ.Proc.Rule 26(b)(4)(C), 28 U.S.C.A.

**[9] Federal Civil Procedure ☜1272.1**
170Ak1272.1

Inquiries concerning credibility of a witness are relevant and thus reasonably calculated to lead to the discovery of admissible evidence, even if the information sought is not directly related to the subject of the underlying litigation. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.

**[10] Federal Civil Procedure ☜1401**
170Ak1401

Plaintiff's medical expert would be compelled to answer deposition questions asking whether she had ever been a party to any litigation, and whether she had ever been the subject of a disciplinary proceeding, as the questions were likely to lead to evidence relevant both to expert's skill as a physician and her credibility, especially regarding her diagnosis of plaintiff. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.

**[11] Federal Civil Procedure ☜1453**
170Ak1453

Plaintiff would be required to pay defendant's reasonable expenses incurred in bringing motion to compel plaintiff's expert to answer deposition questions, where plaintiff's attorney, in objecting to the questions, was not trying to preserve a privilege or enforce a limitation on evidence ordered by the court, but was engaging in frivolous delay of discovery. Fed.Rules Civ.Proc.Rule 37(a)(4)(A), 28 U.S.C.A.
**\*10** Jacques G. Simon, Anderson & Simon, New York City, Preston W. Halperin, Scechtman Halperin Savage, LLP, Providence, RI, for plaintiff.

**\*11** Ann L. Palmieri, Law Office of Ann. L. Palmieri, Boston MA, for Keith L. Forcier and KNA Trucking Co. Inc.

Glenn E. Deegan, Holland and Knight, Daniel K. Hampton, Dianne R. Phillips, Holland & Knight LLP, Boston MA, for Dart Trucking and Ensco Inc.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Plaintiff, Bertrand Cabana ("Cabana"), commenced this suit on April 8, 1999, to recover damages for injuries allegedly caused by exposure to hazardous waste. Now pending before this Court are motions to amend the complaint and the answers of two of the defendants as well as numerous discovery-related motions.

### I. Background

Working as an independent contractor, Cabana was employed as a long distance truck driver by defendant Keith L. Forcier ("Forcier") d/b/a KNA Trucking Co., later KNA Trucking Co. Inc., ("KNA"), from September, 1994 to August, 1997. Since approximately 1993, Forcier has operated KNA which is a truck leasing business. According to contracts between KNA and defendant Dart Trucking Co. ("Dart"),

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Forcier provided trucks and drivers for those trucks to Dart. Between October, 1994 and April, 1996, Cabana hauled hazardous materials in van trailers for Dart pursuant to such a contract.

Cabana alleges that, in addition to transporting hazardous materials for Dart, he was assigned various duties by Dart employees, including 1) loading and unloading drums which contained hazardous waste, 2) performing "emergency response services" (i.e. observing, identifying and containing leaks and spills of hazardous waste inside the van trailers he drove), and 3) sweeping the inside of empty van trailers. Cabana also claims that he delivered hazardous materials to defendant Ensco, Inc. ("Ensco") for disposal.

On April 8, 1999, Cabana filed a three-count complaint against Forcier, KNA, Dart and Ensco (collectively, "the Defendants"), alleging, in general, that as a result of his exposure to hazardous materials at the direction of Dart employees, he has suffered permanent physical injuries which have prevented him from working to his full capacity.

In Count I, Cabana claims that the Defendants negligently breached their duty 1) to provide him with adequate training regarding the transportation of hazardous waste, 2) to provide him with proper protective gear, 3) to package properly the hazardous waste he transported, and 4) to provide him with instruction regarding the handling of hazardous waste leaks. Cabana asserts that such a breach constitutes a violation "of the applicable laws of the United States...and...the Massachusetts Hazardous Waste Management Act". In Count II, he claims that the Defendants knowingly, willfully and intentionally exposed him to hazardous waste without the proper training or protective gear. In Count III, he contends that the Defendants are strictly liable under the federal and state laws applicable to the transport of hazardous waste.

## II. Motion of Dart and Ensco to Compel Mental Examination of Plaintiff (Docket No. 43)

Cabana's clinical neuropsychologist has diagnosed him with "multiple chemical sensitivity" and "cognitive deficits and depression" as a result of his exposure to hazardous waste while working for the Defendants. Report of Dr. Frank R. Sparadeo, at 6-7. Defendants Dart and Ensco (hereinafter collectively referred to as "Dart") now requests that Cabana submit to a mental examination, including psychological testing, by Dr.

Jack Spector, a neuropsychologist, on April 10 and 11, 2001 in Providence, Rhode Island. Dart proposes to conduct an exam similar to that performed by Dr. Sparadeo. Cabana has agreed to the exam on the condition that his attorney is present. Although Dart agrees that Cabana's attorney may observe the clinical interview portion of the exam, it protests that the presence of a third party during administration of formal neuropsychological tests will compromise the reliability of those tests.

Accordingly, Dart has moved for an order, pursuant to Fed.R.Civ.P. 35, compelling Cabana *12 to submit to the mental examination without his attorney present. Dart also requests a 30-day extension after completion of the neuropsychological exam to complete its expert medical disclosure and to take the deposition of plaintiff's medical experts, including Dr. Sparadeo.

Rule 35(a) provides:
> When the mental or physical condition...of a party...is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

[1] In accordance with that rule, this Court may order a physical or mental examination if the physical or mental condition of a party is "in controversy" and "good cause" is shown. *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964) ; *accord Sacramona v. Bridgestone/Firestone, Inc.*, 152 F.R.D. 428, 431 (D.Mass.1993). "The moving party must make an affirmative showing that the condition is genuinely in controversy and that good cause exists for ordering a particular examination." *Sacramona*, 152 F.R.D. at 431. The pleadings alone are sufficient to satisfy that burden when a plaintiff in a negligence action asserts mental or physical injury. *Schlagenhauf*, 379 U.S. at 119, 85 S.Ct. 234; *accord Cody v. Marriott Corp.*, 103 F.R.D. 421, 422 (D.Mass.1984).

[2] In his complaint, Cabana alleges that the Defendants negligently breached various duties owed to him and that as a result thereof, he is "sick, sore, lame [and] unable to follow his vocation to the extent

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

that he previously did". Although those allegations do not expressly place Cabana's mental condition "in controversy", the report of his neuropsychologist clearly does. Dart has complied with Rule 35 by providing a time and place for the exam as well as the name of the examiner and a general idea of the exam's intended scope.

[3] With respect to the presence of Cabana's attorney, the clear majority of federal courts have refused to permit third party observers at Rule 35 examinations. *See, e.g., Hertenstein v. Kimberly Home Health Care, Inc.,* 189 F.R.D. 620, 628-34 (D.Kan.1999); *Holland v. United States,* 182 F.R.D. 493, 495-96 (D.S.C.1998) ; *Ragge v. MCA/Universal Studios,* 165 F.R.D. 605, 609-10 (C.D.Ca.1995); *Tirado v. Erosa,* 158 F.R.D. 294, 295-95 (S.D.N.Y.1994); *Duncan v. Upjohn Co.,* 155 F.R.D. 23, 26-27 (D.Conn.1994). The rationale for excluding third parties has been summarized as follows:

> 1) the special nature of the psychiatric examination requires direct and unimpeded one-on-one communication without external interference or intrusion; 2) in contrast to depositions and other forms of discovery, Rule 35 expert examinations are not intended to be adversarial; 3) fairness dictates that if defense counsel cannot be present when a plaintiff is interviewed by a psychiatrist who will testify at trial on his behalf, then plaintiff's counsel cannot be present when plaintiff is examined by defendant's expert psychiatrist; and 4) any concerns with distortions or inaccuracies by the examining psychiatrist can be addressed through traditional methods of impeachment and cross-examination.

*Baba-Ali v. City of New York,* 1995 WL 753904, at *3 (S.D.N.Y. Dec.19, 1995). Accordingly, Dart's motion to compel will be allowed and Cabana's attorney will not be permitted to attend the formal testing portion of the examination.

### III. Motion of Forcier and KNA for Leave to Amend Their Answers to Add Counterclaims for Breach of Contract (Docket No. 46)

[4] Defendants Forcier and KNA (hereinafter referred to collectively as "KNA") seek leave to amend their answers, pursuant to Fed.R.Civ.P. 13(f), to assert counterclaims for breach of contract. Specifically, KNA claims that by bringing the instant suit, Cabana has breached a contract, dated October **13** 11, 1994, whereby he agreed not to hold KNA responsible for any injuries or losses incurred ("the Release"). KNA cites "inadvertence" as its excuse for failing to assert

the counterclaim earlier.

Counterclaims generally must be filed within 20 days after service of the summons and complaint. Fed.R.Civ.P. 12(a). The proposed counterclaims are not timely, having been filed approximately six months after the answers of Forcier and KNA. However, Rule 13(f) provides that

> [w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment.

"Rule 13(f)...is interpreted liberally, and amendment is freely granted in order to settle all claims in one action." *Salomon S.A. v. Alpina Sports Corp.,* 737 F.Supp. 720, 721 (D.N.H.1990). When assessing "excusable neglect", courts typically consider 1) the good faith of the claimant, 2) the extent of the delay, and 3) the danger of prejudice to the opposing party. *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 392 n. 10, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

Cabana replies that leave should not be granted because the amendments would be futile. Although futility is an adequate reason for denying a motion to amend, *see Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir.1996) ("futility" standard mirrors standard for failure to state a claim), here sufficient questions of law and fact exist surrounding the Release and its scope to render the counterclaim for breach of contract not futile.

Moreover, the requested amendments will not result in undue delay or prejudice to Cabana because the new counterclaims arise out of the same facts that form the basis of his claims. For that reason, the counterclaims are compulsory, *see* Fed.R.Civ.P. 13(a), and thus must be asserted or waived in subsequent cases. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1430 (1990). Finally, there is no reason to question the good faith of Forcier and KNA here and the motion to amend their answers will therefore be allowed.

### IV. Motion of Plaintiff for Leave to File an Amended Complaint (Docket No. 48)

[5] Pursuant to Fed.R.Civ.P. 15, Cabana seeks leave to amend his complaint 1) to add DartAmericA, Inc. ("DartAmerica"), the parent of defendant Dart, as a defendant, 2) to supplement Counts I and II with new allegations, and 3) to supplement Count II with the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

basis for his calculation of punitive damages under the Massachusetts Consumer Protection Act, M.G.L. c. 93A.

Rule 15(a) provides, in pertinent part, that leave to amend pleadings "shall be freely given when justice so requires." If the movant has at least colorable grounds for relief, justice requires allowing amendments unless the movant is guilty of undue delay or bad faith, or if permission to amend would unduly prejudice the opposing party. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Where the moving party seeks to add new legal claims, most courts have interpreted the "colorable grounds" requirement as mandating an inquiry comparable to that undertaken when analyzing a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). *Estate of Golas v. Paul Revere Ins. Group,* 175 F.R.D. 421, 423 (D.Mass.1997).

This Court finds no undue delay on the part of Cabana such that his motion for leave to amend the complaint should be denied nor will the amended complaint unduly prejudice the Defendants. With respect to Count II of the proposed amended complaint, however, Dart objects on the grounds that a claim under the Massachusetts Consumer Protection Act, M.G.L. c. 93A, would be futile.

Section 2(a) of Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce...." In the amended Count II, Cabana claims that Dart and DartAmercia engaged in an unfair/deceptive act by falsely representing to him that cleanup of hazardous waste was part of his truck driving duties without providing the *14 requisite training and equipment and without properly compensating him for performing such cleanup. He contends that he is entitled to punitive damages under § 11 of Chapter 93A which provides for up to treble damages for unfair or deceptive acts by one businessman against another. The statute allows recovery for damages to

> [a]ny person who engages in the conduct of any trade or commerce and who suffers any loss...as the result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act....

M.G.L. c. 93A, § 11.

Dart responds that the amendment is futile because Chapter 93A does not apply to the employer-employee relationship. Indeed, it is well established that disputes between employers and employees do not fall within the scope of § 11 of Chapter 93A. *Manning v. Zuckerman,* 388 Mass. 8, 14, 444 N.E.2d 1262 (1983). The rationale behind the exception is that Chapter 93A, § 11 prohibits unfair or deceptive acts or practices "that may arise in dealings between discrete, independent business entities, and not those that may occur within a single company." *Id.* at 12, 444 N.E.2d 1262.

Cabana was an independent contractor of Forcier d/b/a KNA. It is not clear, however, that Cabana was an employee of Dart. The status of his relationship with Dart is uncertain because he transported waste for Dart pursuant to a contract between KNA and Dart. Although the possibility that Cabana was not an employee of Dart is sufficient to render the Chapter 93A claim in the amended complaint not futile, the merits of such a claim are dubious at best.

Dart also argues that the amendment should be disallowed because Cabana failed to plead that the alleged deceptive/unfair acts occurred in Massachusetts as required by the statute. Viewing the facts in the light most favorable to the plaintiff, this Court finds that it can be inferred from the amended complaint that Cabana did at least a significant portion of his driving for Dart in Massachusetts. Accordingly, the motion to amend is not deficient on that ground and will be allowed.

## V. Motion of Plaintiff to Modify Scheduling Order (Docket No. 49)

[6] Due to Cabana's illness, this Court entered an expedited discovery order in this case. The original Scheduling Order, dated July 27, 1999, required fact discovery to be completed by November 30, 1999, and all discovery to be completed by March 31, 2000. That Scheduling Order has been amended several times by agreement of the parties and permission of the Court. The deadline for disclosure of expert witnesses was extended three times. Notably, the extension granted on December 7, 1999 allowed Cabana

> to designate and provide required disclosure information for one or more trial experts related solely to issues of safety and driver training (and no other expert covering any other subject matter)....

Joint Stipulation to Amend Scheduling Order (November 31, 1999), at ¶ 4.

Cabana has identified two transportation safety experts, Hilton Kenneth Hudnell and Barry L.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Brunstein ("Brunstein"), both of whom reported that Dart provided inadequate training and protective gear to Cabana in violation of regulations promulgated under the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. §§ 651 *et seq.* Cabana now seeks to modify the Scheduling Order once again so that he may produce another safety expert ("the OHSA expert") to testify with respect to the duties imposed by such regulations, particularly 29 C.F.R. § 1910.120.

A scheduling order should not be modified except upon a showing of "good cause" and "by leave of the district judge", Fed.R.Civ.P. 16(b), "supported by affidavits, other evidentiary materials, or references to pertinent portions of the record." Local Rule 16.1(G). This District Court has stated that
> [t]he good cause test requires that the deadline in the scheduling order may not reasonably be met, despite the diligence of the party seeking the extension. The requirements of good cause are more liberal than a "manifest injustice" or a "substantial *15 hardship" test. "Nonetheless, this does not mean that scheduling orders will be modified simply upon request. In the absence of some showing of why an extension is warranted, the scheduling order will control."
*Tele-Connections, Inc. v. Perception Technology Corp.,* 1990 WL 180707, at *1 (D.Mass. Nov.5, 1990) (*quoting* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1522.1 (1990)).

Cabana asserts that there is "good cause" to modify the Scheduling Order because his expert, Brunstein, discussed OSHA regulations in his report and it would therefore be useful to have an OSHA expert "opine specifically with respect to the OSHA regulations". Cabana offers no support, however, for his assertion that his proffered expert testimony establishes "good cause" to extend discovery as required by Local Rule 16.1(G), other than the report of his current expert and correspondence between the parties concerning the pending discovery dispute. Moreover, there is no indication that an OHSA expert's testimony would not be duplicative of the testimony of plaintiff's two other experts. Indeed, the OHSA expert is expected to address 29 C.F.R. § 1910.120, a regulation which is exhaustively discussed in both of their reports. The relevance of OHSA should have been clear to Cabana from the inception of the instant suit and he will have to be satisfied with the testimony of his two disclosed experts. *See Sprague v. United Air Lines, Inc.,* 2000 WL 621112, at *1 (D.Mass. May 3, 2000) (denying motion for modification of scheduling order where

issue to which proposed new expert would testify "did not arise unannounced and unforeseen after the deadline [for designation of rebuttal witnesses]."). Cabana's motion to modify the Scheduling Order will therefore be denied.

**VI. Motion of Dart and Ensco to Compel Compliance with Expert Deposition Agreement, or, in the Alternative, to Set a "Reasonable Fee" Pursuant to Fed.R.Civ.P. 26(b)(4)(C) (Docket No. 56)**

Pursuant to Fed.R.Civ.P. 26(b)(4)(A), Dart has sought to depose Dr. Grace Ziem, Cabana's medical toxicology expert. Dr. Ziem's deposition was scheduled for June 27, 28 and 29, 2000, in Boston but she failed to attend on the grounds that she must be reimbursed for her time in advance of the deposition and out of reluctance to travel from Maryland to Boston to be deposed.

Dart claims that it offered to compensate Dr. Ziem as follows: 1) $325 per hour for deposition time, 2) $975 for each day of travel, and 3) out-of-pocket travel expenses. Dart further contends that Cabana's attorney effectively agreed to that arrangement in the course of correspondence between the parties. Having reviewed that correspondence, this Court finds that, although the parties agreed to Dart's deposition of Dr. Ziem, they never reached a firm understanding with respect to her compensation.

According to her standard rates, Dr. Ziem demands $21,250 for three days of deposition, broken down as follows: 1) $9,000 for 3 days of deposition time ($375 per hour times an 8 hour per day minimum); 2) $3,250 for travel ($325 per hour for an estimated 10 hours of travel time); 3) $4,500 overnight fee for 3 nights ($1,500 per night); 4) $4,000 preparation fee; and 5) other expenses (flight tickets, transportation, meals, hotel).

Fed.R.Civ.P. 26(b)(4)(C) provides:
> Unless manifest injustice would result...the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision....
The rationale behind the rule is that it would be unfair to require one party to provide discovery for another party's benefit without reimbursement. *Magee v. Paul Revere Life Ins. Co.,* 172 F.R.D. 627, 645 (E.D.N.Y.1997).

[7] In determining whether an expert's fee is

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

reasonable, courts have considered the following factors: 1) the expert's area of expertise, 2) the expert's necessary training and education, 3) the prevailing rates for comparable expert witnesses, 4) the nature, quality and complexity of the discovery provided, 5) the cost of living in the relevant community, 6) the fee being charged by the expert to the party who retained him, 7) fees *16 traditionally charged by the expert on related matters, and 8) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26. *See, e.g., Coleman v. Dydula,* 190 F.R.D. 320, 324 (W.D.N.Y.1999); *Mathis v. NYNEX,* 165 F.R.D. 23, 24-25 (E.D.N.Y.1996); *Bowen v. Monahan,* 163 F.R.D. 571, 573 (D.Neb.1995). Those factors, however, merely serve to guide the court and

> [t]he ultimate goal must be to calibrate the balance so that a plaintiff will not be unduly hampered in his/her efforts to attract competent experts, while at the same time, an inquiring defendant will not be unfairly burdened by excessive ransoms which produce windfalls for the plaintiff's experts.

*Anthony v. Abbott Lab.,* 106 F.R.D. 461, 465 (D.R.I.1985).

Dart contends that $21,250 is not a "reasonable" fee, noting that it breaks down to $1,180 per hour and an annualized income of over $1 million and that in any event, it should not be paid in advance. Moreover, Dart asserts that it would not even need to take Dr. Ziem's deposition if her expert report, submitted pursuant to Fed.R.Civ.P. 26(a)(2)(B), had not been so lacking in citations to supporting authority.

Cabana responds that the subject fees are simply Dr. Ziem's standard expert witness fees which are justified because she is a nationally recognized expert in environmental and occupational exposure. Moreover, Cabana's attorney complains that because he has had to pay Dr. Ziem's high rates, Dart should as well, especially in light of Cabana's meager financial means.

[8] This Court does not question Dr. Ziem's qualifications which appear to be prodigious but her requested fees are simply unconscionable. Awarding such fees would constitute an abuse of Rule 26(b)(4)(C), *see Anthony,* 106 F.R.D. at 465, and Dart should not be held hostage by Cabana's choice of such an expensive expert. *See Bowen,* 163 F.R.D. at 574 ("[w]hile plaintiff may contract with any expert...and, by agreement, that expert may charge unusually high rates for services, the discovery process will not automatically tax such unreasonable fees upon the defendant.").

Nonetheless, Dart is still required to pay Dr. Ziem a reasonable fee for submitting to a deposition, including preparation time. Dr. Ziem will be reimbursed for deposition time at her hourly rate of $375 but her eight hours per day minimum will be reduced to $2,250 (six hours). Dr. Ziem will be reimbursed for preparation time at the rate of $325 per hour, not to exceed a total of six hours of preparation. *See Magee,* 172 F.R.D. at 646-47 (noting that, although courts are divided with respect to payment for time spent preparing for depositions, the better view is that experts should be paid for prep time because good preparation will lead to a more efficient deposition).

This Court is sensitive to Dr. Ziem's desire to remain in Maryland in order to attend to her patients. Accordingly, the deposition will be taken in Maryland at a time and place mutually agreeable to the parties. Dart will reimburse plaintiff's counsel for his reasonable travel and lodging expenses (but not legal fees) in connection with the taking of Dr. Ziem's deposition.

## VII. Motion of Dart and Ensco to Compel Plaintiff's Treating Physician/Expert Witness to Answer Deposition Questions (Docket No. 63)

In July, 2000, Dart's counsel took the deposition of Cabana's treating physician and expert witness, Dr. Robban A. Sica ("Dr.Sica"). On the second day of that deposition, counsel for Dart asked Dr. Sica 1) whether she had ever been a party to any litigation, and 2) whether she had ever been the subject of a disciplinary proceeding. Counsel for Cabana objected to those questions on the grounds that Dr. Sica's involvement in prior litigation and/or disciplinary proceedings was not relevant to the instant case and, accordingly, Dr. Sica was instructed not to answer.

Dart has now moved for an order compelling Dr. Sica to answer the two questions pursuant to Fed.R.Civ.P. 37(a)(2), and to recover the "reasonable expenses incurred in making the motion" under subsection (a)(4)(A) of the same rule. In response, Cabana has moved for a protective order under Fed.R.Civ.P. 30(d)(3) and 26(c) on the *17 grounds that the questions were asked in bad faith or unreasonably to annoy, harass or embarrass Dr. Sica.

If a deponent refuses to answer deposition questions, the party seeking those responses may file a motion pursuant to Fed.R.Civ.P. 37(a)(2)(B) for an order compelling answers. The motion "should be granted if

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

the questions are relevant and proper and denied if the questions call for privileged information or if an answer is otherwise unnecessary." 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2286 (1994). Fed.R.Civ.P. 37(a)(4)(A) provides for the mandatory shifting of costs, including attorney's fees, to the losing party on a motion to compel:

> unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery, without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

The 1993 Advisory Committee Notes explain that the phrase "opportunity to be heard" is used instead of "opportunity for a hearing" to make clear that courts can determine whether to award expenses on the basis of written submissions alone.

[9] As counsel is well aware, the scope of discovery under the Federal Rules is very broad. *See* Fed.R.Civ.P. 26(b)(1). Under the liberal standard set forth in that rule, "information is discoverable if there is any possibility it might be relevant to the subject matter of the action." *EEOC v. Electro-Term, Inc.*, 167 F.R.D. 344, 346 (D.Mass.1996). Inquiries concerning a witnesses' credibility are relevant and thus reasonably calculated to lead to the discovery of admissible evidence, *Davidson Pipe Co. v. Laventhol & Horwath*, 120 F.R.D. 455, 461-64 (S.D.N.Y.1988), even if the information sought is not directly related to the subject of the underlying litigation. *International Brotherhood of Teamsters v. Eastern Conference of Teamsters*, 162 F.R.D. 25, 29 (S.D.N.Y.1995).

[10] Notwithstanding Cabana's objections, this Court finds that Dr. Sica's involvement in any prior litigation or disciplinary proceedings is clearly relevant to the instant suit and therefore discoverable. Questions regarding such litigation or disciplinary proceedings are likely to lead to evidence relevant both to Dr. Sica's skill as a physician and her credibility, especially regarding her diagnosis of Cabana with multiple chemical sensitivity ("MCS"). Accordingly, the motion to compel Dr. Sica to answer deposition questions regarding her involvement in any prior litigation or disciplinary proceedings will be allowed.

[11] Rule 37(a)(4)(A) requires this Court to order Cabana or his counsel to pay Dart's reasonable expenses incurred in bringing the pending motion unless it finds that 1) the opposition to the motion to

compel was "substantially justified", or 2) other circumstances make an award of expenses unjust. *American Hangar, Inc. v. Basic Line, Inc.*, 105 F.R.D. 173, 176 (D.Mass.1985).

This court finds neither that Cabana's opposition to the motion to compel was "substantially justified" nor that an award of expenses would be unjust in this case. With regard to the "substantial justice" test, the Advisory Committee Note of 1970 states that

> [t]he rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine issue exists [and further points out that] the potential or actual imposition of expenses is virtually the sole formal sanction in the rules to deter a party from pressing to a court hearing frivolous requests for or objections to discovery.

Fed.R.Civ.P. 30(d)(1) permits a party to instruct a deponent not to answer

> only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion [for a protective order based on a bad faith, unreasonable examination of the deponent].

The objections made by Cabana's attorney at Dr. Sica's deposition constitute that kind of frivolous delay of discovery that Rule 37 was designed to prevent. Cabana's attorney was *18 not trying to preserve a privilege or enforce a limitation on evidence ordered by this Court. Furthermore, there is simply no evidence that counsel for Dart harassed Dr. Sica. Accordingly, the objections were inappropriate under Rule 30(d)(1), and Dart's motion to compel will be allowed.

### ORDER

For the reasons set forth in the Memorandum above:

1) the motion of defendants Dart and Ensco to compel a mental examination of the plaintiff (Docket No. 43) is ALLOWED; plaintiff will appear at a mutually agreeable time and place on April 10 and 11, 2001, in Providence, Rhode Island to be examined;

2) the motion of defendants Forcier and KNA for leave to amend their respective answers to add counterclaims for breach of contract (Docket No. 46) is ALLOWED;

3) the motion of plaintiff for leave to file an amended complaint (Docket No. 48) is ALLOWED;

4) the motion of plaintiff to modify this Court's

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Scheduling Order (Docket No. 49) is DENIED;

5) the motion of defendants Dart and Ensco to compel plaintiff's medical toxicology expert, Dr. Grace Ziem, to agree to be deposed (Docket No. 56) is ALLOWED subject to the following conditions:

a) Dr. Ziem shall be reimbursed at $375 per hour for deposition time (minimum of six hours per day);

b) Dr. Ziem shall be reimbursed at $325 per hour for preparation time (maximum of six hours total);

c) Dr Ziem's deposition shall take play in Maryland at a mutually agreeable time and place;

d) Dart and Ensco will reimburse Cabana's attorney for reasonable travel and lodging expenses (but not legal fees) incurred in connection with Dr. Ziem's deposition; and

6) the motion of defendants Dart and Ensco to compel plaintiff's treating physician, Dr. Robban A. Sica, to answer deposition questions regarding prior involvement in any litigation or disciplinary proceedings (Docket No. 63) is ALLOWED.

 So ordered.

200 F.R.D. 9, 49 Fed.R.Serv.3d 382

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works