2000 WL 33170885                                                                                    Page 10
(Cite as: 2000 WL 33170885 (D.Kan.))

Only the Westlaw citation is currently available.

United States District Court, D. Kansas.

Russell L. HARVEY, Plaintiff,
v.
Charles C. SHULTZ, M.D., Defendant.

No. 99-1217-JTM.

Nov. 16, 2000.

MEMORANDUM AND ORDER

HUMPHREYS.

*1 This medical malpractice action is before the court on defendant's motion (Doc. 28) to determine the reasonableness of deposition fees requested by plaintiff's (1) expert witness and (2) treating physicians. Defendant complains that: 1) the $2000 fee requested by plaintiff's expert witness is unreasonable because the deposition lasted only two hours, and 2) the requested reimbursement of $500 per hour by the treating physicians is also unreasonable. The arguments on these issues and the court's rulings are discussed in greater detail below.

I. Plaintiff's Expert Witness

Background

Plaintiff designated Steven I. Becker, M.D. as an expert witness and defendant took his deposition on April 12, 2000. Prior to the deposition, Dr. Becker advised defense counsel that his appearance fee would be $500 per hour with a minimum of four hours. Dr. Becker required the four hour minimum because the unspecified time to complete the deposition precluded him from scheduling any patients for a full afternoon. The deposition was completed in two hours and defendant paid the $2000 fee under protest. Defendant moves the court to set a "reasonable" fee under Fed.R.Civ.P. 26(b)(4)(C) and argues that Dr. Becker should only be paid for the two hours of deposition time.

Analysis

Fed.R.Civ.P. 26(b)(4)(C) provides that "[u]nless manifest injustice would result, (i) the court *shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision....*" *Id.* (emphasis added).

Neither party has adopted or asserted a "manifest injustice" argument. Instead, the issue as framed by counsel is one of "reasonableness." When deciding what constitutes a "reasonable fee," courts have considered several factors including:
> (1) the witness's area of expertise, (2) the education and training that is required to provide the expert insight that is sought, (3) the prevailing rates for other comparably available experts, (4) the nature, quality and complexity of the discovery responses provided, (5) the cost of living in the particular geographic area, (6) the fee being charged by the expert to the party who retained him, (7) fees traditionally charged by the expert on related matters, and (8) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26.

*Coleman v. Dydula,* 190 F.R.D. 320, 325 (W.D.N.Y.1999) (citations omitted).

Neither party addresses the first seven factors; instead, their analyses focus on the final catch-all factor, "any other factor likely to be of assistance to the court." Because the deposition lasted only two hours, defendant argues that Dr. Becker's $2000 fee results in the inflated rate of $1000 per hour. Citing cases by other courts, defendant urges that an hourly rate of $1000 is unreasonable. *See U.S. Energy Corp. v. Nukem, Inc.,* 163 F.R.D. 344, 345-46 (D.Colo.1995) (expert neurologist requested $800/hour, $400/hour allowed); *Bowen v. Monahan,* 163 F.R.D. 571 (D.Neb1995)(expert toxicologist requested $3000/half day, $1500/half day allowed); *Hose v. Chicago and North Western Transportation Co.,* 154 F.R.D. 222 (S.D.Iowa 1994)(expert neurologist requested $800/hour, $400/hour allowed). Defendant suggests that payment for the actual deposition time ($500 x 2 hours = $1000) would be fair compensation. Plaintiff counters that the four hour minimum is reasonable considering that Dr. Becker had to "block out" an entire afternoon for the deposition and presumably experienced a corresponding loss of revenue.

*2 The court concludes that Dr. Becker's $2000 fee is reasonable in the narrow context of this case. The hourly rate of $500 has not been seriously contested by defendant. Rather, defendant's objection targets the four hour minimum. This issue must be decided on a case by case basis. Here, the deposition was scheduled for an indefinite duration during normal afternoon office hours (1 p.m. to 5 p.m.). This arrangement prevented Dr. Becker from scheduling patients for the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

entire afternoon. *Compare Chicago and North Western Transportation Co.,* 154 F.R.D. at 227 (deposition taken *after* normal business hours minimizes any inconvenience to expert's medical practice). Under the circumstances presented in this limited context, incorporating a minimum number of hours into a medical expert's deposition fee is reasonable. The four hour minimum at $500 per hour is a reasonable fee ($2000) when the deposition schedule requires a physician to clear a half-day of appointments.

II. Plaintiff's Treating Physicians

Background

Defendant sought to depose Dr. Benson and Dr. Panichabhongse, two of plaintiff's treating doctors. Plaintiff's counsel assisted in the deposition scheduling and advised defendant by letter of March 6, 2000 that Dr. Panichabhongse's requested deposition fee was $500 per hour. He also advised that Dr. Benson's requested fee was $2500 for three hours preparation and two hours deposition time. [FN1]

> FN1. Dr. Benson is a physician with the Mayo Clinic, Scottsdale, Arizona. A copy of the Clinic's hourly rates for physicians and payment policy was included with the March 6 letter.

At the beginning of Dr. Benson's deposition on May 11, 2000, defendant objected to the $2500 fee request for the first time. Dr. Panichabhongse's deposition was taken on May 19, 2000, and he requested $615 for one hour and fifteen minutes of deposition time. Defendant objects to the payment of both physicians' deposition fees.

Analysis

Defendant complains that the fee request by the two treating physicians is the equivalent of an expert witness fee and that expert rates are excessive for treating physicians. Defendant further contends that because these two "treating" doctors are fact rather than expert witnesses the controlling statute limits their fees to $40 per day plus mileage. 28 U.S.C. § 1821(b). *See also Haslett v. Texas Industries, Inc.,* 1999 WL 354227 (N.D.Tex.1999); *Fisher v. Ford Motor Co.,* 178 F.R.D. 195, 197 (N.D.Ohio 1998). Plaintiff responds that treating doctors should be allowed a reasonable fee for deposition testimony beyond the statutory witness fee. *Coleman,* 190 F.R.D. at 324 (treating physicians entitled to a reasonable fee calculated upon income lost as a result of being required to provide deposition testimony). [FN2]

> FN2. Plaintiff also argues that defendant's deposition inquiry went beyond the treatment provided by Dr. Benson and Dr. Panichabhongse and requested expert opinions on other medical topics. This argument cannot be fully evaluated because a number of the deposition pages cited by plaintiff were erroneously omitted from the attachments to the brief. If the doctors were required to provide expert opinions on matters beyond their personal observations, diagnosis, and prescribed medical care, the court would evaluate their compensation under the *Coleman* factors.

This court adopts the view that treating physicians should ordinarily be allowed a reasonable fee beyond the $40 statutory limit. [FN3] As noted by Judge Fitzwater in *Haslett v. Texas Industries,*

> FN3. The allowance of a reasonable fee is by no means mandatory and the court retains discretion in setting fees in excess of the statutory fee. *See Haslett,* 1999 WL 354227 at * 2. Ordinarily, a fee dispute should be presented to the court in advance of the deposition. Where timely contested, the court would consider such factors as 1) the party's ability to pay the fee, 2) the burden on the treating physician, 3) the nature of the case, 4) the materiality of the treating doctor's testimony, and 5) whether less disruptive avenues exist for acquiring the relevant information. The dispute in this case was presented to the court after the depositions were taken. There is no indication that defendant is unable to pay the fee.

Physicians provide invaluable services to the public and should be remunerated for their time when they cannot deliver medical care. They often have substantial overhead costs that they incur whether they are treating a patient or testifying about one. Litigators and their clients typically obtain physician testimony by deposition rather than by imposing the additional burdens associated with attendance at trial. They also respect the need to compensate physician witnesses to the extent necessary to cover their overhead costs and to pay them a fee commensurate with their professional standing and special expertise.

*3 *Id.* 1999 WL 354227 at *2. Moreover, it is customary in this district and in Kansas state courts for parties to compensate physicians at a reasonable rate

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2000 WL 33170885
(Cite as: 2000 WL 33170885, *3 (D.Kan.))

Page 12

for deposition testimony in cases where they are not parties. In 1991 the Sedgwick County Medical Society and the Wichita Bar Association agreed upon a medical-legal code which provides that a treating physician is entitled to compensation for deposition time when the physician is required to testify about medical matters related to the patient. *Jackson v. Comp*, No. 00-1028- MLB, Memorandum and Order, Docket No. 45, (D.Kan. July 14, 2000). The code defines "reasonable charge" as one which "is comparable to [a physician's] normal charge to patients for the expenditure of similar time, skill and judgment." *Id.*

Although the court is inclined to order a fee in excess of the statutory $40 fee, no evidence has been presented regarding whether the fee of $500 per hour bears any relationship to the income presumably lost by the doctors during the depositions. Both doctors simply state that their fee is $500 per hour. This demand is insufficient because it is unsupported and conclusory. It is rejected without prejudice. Whether the proposed fee of $500 per hour is reasonable must await further presentation of sufficient factual data. Counsel for both parties shall confer regarding a reasonable deposition fee. [FN4] If unable to reach agreement, plaintiff may file a motion supported by appropriate evidence to permit the court to determine "reasonable" deposition fees.

> FN4. The court reserves any ruling on the appropriateness of billing for time spent by a treating doctor to review and prepare for the deposition. However, the deposition will be less efficient if a treating doctor has not reviewed the patient's history and records prior to the deposition. Counsel and the doctor should consider this factor when negotiating a "reasonable" fee.

IT IS THEREFORE ORDERED that defendant's motion to determine deposition fees (Doc. 28) is GRANTED IN PART and DENIED IN PART, consistent with the rulings set forth herein.

2000 WL 33170885, 2000 WL 33170885 (D.Kan.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

188 F.R.D. 543 \
(Cite as: 188 F.R.D. 543)

Page 13

United States District Court,
D. Arizona.

Gregory C. EDIN, DDS, Plaintiff,
v.
THE PAUL REVERE LIFE INSURANCE
COMPANY, Defendant.

No. CIV. 97-2434PHX-LOA.

Sept. 24, 1999.

Insured brought suit against insurer, alleging breach of disability policy and bad faith litigation. On insured's motion for protective order concerning an expert witness fee, the District Court, Anderson, United States Magistrate Judge, held that: (1) orthopedic surgeon's expert witness fees of $800 for the first hour of deposition by adverse counsel, and $600 for the second hour were grossly unreasonable, and would be reduced to $450 per hour; (2) it was not manifestly unjust to require plaintiff to pay expert witness fee for his deposition of orthopedic surgeon retained by defendant to conduct independent medical examination and testify at trial; and (3) where plaintiff's counsel initially reserved a full two hours on doctor's office calendar for a deposition, and then chose to conclude the deposition after only one hour, it was reasonable for plaintiff to compensate doctor for the second hour.

Motion granted.

West Headnotes

[1] Federal Civil Procedure ⟨⟩1333 \
170Ak1333

What constitutes a "reasonable fee" for an expert witness at deposition lies within the court's sound discretion. Fed.Rules Civ.Proc.Rule 26(b)(4)(C), 28 U.S.C.A.

[2] Federal Civil Procedure ⟨⟩1333 \
170Ak1333

Factors to consider in determining the reasonableness of an expert witness fee at deposition are: (1) the witness's area of expertise; (2) the education and training required to provide the expert insight which is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality, and complexity of the discovery responses provided; (5) the fee actually charged to the party who retained the expert; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to assist the court in balancing the interests implicated by discovery rule. Fed.Rules Civ.Proc.Rule 26(b)(4)(C), 28 U.S.C.A.

[3] Federal Civil Procedure ⟨⟩1333 \
170Ak1333

Orthopedic surgeon's expert witness fees of $800 for the first hour of deposition by adverse counsel, and $600 for the second hour were grossly unreasonable, and would be reduced to $450 per hour. Fed.Rules Civ.Proc.Rule 26(b)(4)(C), 28 U.S.C.A.

[4] Federal Civil Procedure ⟨⟩1333 \
170Ak1333

It was not manifestly unjust to require plaintiff to pay expert witness fee for his deposition of orthopedic surgeon retained by defendant to conduct independent medical examination and testify at trial, where plaintiff was not indigent, and requiring him to pay a deposition fee incurred in litigation that he voluntarily initiated would not cause undue hardship. Fed.Rules Civ.Proc.Rule 26(b)(4)(C), 28 U.S.C.A.

[5] Federal Civil Procedure ⟨⟩1333 \
170Ak1333

Where plaintiff's counsel initially reserved a full two hours on doctor's office calendar for a deposition, and then chose to conclude the deposition after only one hour, it was reasonable for plaintiff to compensate doctor for the second hour, considering that doctor and office manager reasonably relied on counsel's representation that the deposition would last two hours so that no other medical matters were scheduled during the second hour. Fed.Rules Civ.Proc.Rule 26(b)(4)(C), 28 U.S.C.A.

*544 Michael J. Meehan, Meehan & Associates, Malcolm Kohl Ryder, Tucson, AZ, for plaintiff.

Stephen M. Bressler, Lewis & Roca LLP, Phoenix, AZ, for defendant.

MINUTE ENTRY, OPINION AND ORDER

ANDERSON, United States Magistrate Judge.

On September 13, 1999, the Court, for the second time, heard oral argument on Plaintiff's Motion For Protective Order (doc. # 98). Plaintiff is represented by counsel, Malcolm K. Ryder. Defendant is represented by Stephen E. Silverman. The

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

proceedings are being tape recorded.

Initially, the Court *sua sponte* elects to bifurcate consideration of Defendant's Motion To Reduce Plaintiff's Experts' Fees (doc. # 133), filed just recently on September 9, 1999. A briefing schedule and a date and time for oral argument will be set hereinafter. The Court has reviewed and considered the numerous pleadings filed by both sides on this issue as well as the file as a whole.

Oral argument is presented to the Court.

The matter is taken under advisement with written order to follow.

## BACKGROUND

The pending discovery dispute arises from the deposition fees which expert witness Zoran Maric, M.D., a Phoenix orthopedic surgeon, charged Plaintiff's counsel. Defendant retained Dr. Maric to conduct an independent medical examination of Plaintiff and to testify at trial in this alleged breach of disability policy and bad faith litigation. The parties have consented to proceed before a United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c)(1).

Relying on Rule 26(b)(4)(C)(i), Fed.R.Civ.P., Plaintiff's counsel argues that (1) because of his poor financial condition, it would be a "manifest injustice" to require Plaintiff to pay any of Dr. Maric's deposition fees and that all prepaid fees should be reimbursed to Plaintiff, (2) if the Court finds that Plaintiff's financial condition does not warrant a total waiver of Dr. Maric's fees, Plaintiff should only be required to pay a "reasonable fee" which he submits is a maximum of $400.00 per hour, not the $800.00 first hour fee or the $1400.00 fee for two hours that Dr. Maric charged, and (3) Plaintiff should not be required to pay any portion of Dr. Maric's $1400.00 cancellation fee billed by Dr. Maric's office to defense counsel's firm, Lewis and Roca, LLP, because Plaintiff did not cancel the first deposition scheduled on July 14, 1999 and, or in the alternative, the cancellation fee is unreasonable.

Although somewhat convoluted, the facts leading up to Dr. Maric's scheduled- but-not-taken deposition of July 14, 1999 are not seriously disputed. Apparently as an accommodation to Plaintiff's counsel and because Dr. Maric is a defense trial expert, defense counsel volunteered to make the necessary arrangements with the doctor's staff and thereafter scheduled the deposition of Dr. Maric on the mutually agreeable date of July 14, 1999 for two hours, the amount of time Plaintiff's counsel desired. Thereafter Plaintiff's counsel sent out a Notice of Deposition. Dr. Maric was not served with a subpoena for this deposition. The parties do not dispute that all counsel possessed a copy of Dr. Maric's fee schedule [FN1] sometime before July 12, 1999.

> FN1. Dr. Maric's fee schedule is set forth as Exhibit 3 to Defendant's Supplemental Response, filed on August 20, 1999, in a document called Confirmation Form. It provides, in part, that his deposition fees are "$500.00 1st half hour; $300.00 each add'l half hour." His cancellation policy requires "[t]estimony ... be cancelled at least (5) business days prior or there will be a 50% charge. If cancelled within (3) business days prior, the entire prepay is non-refundable."

According to Plaintiff's counsel, Malcolm K. Ryder of Tucson, Dr. Maric's office staff called him in Tucson on the afternoon of July 12th, less than two full days before the July 14th deposition, and advised him that if the doctor's office did not receive the full payment ($1400.00) by 5:00 p.m. that same day, the deposition would be cancelled. Later that same day, Plaintiff's counsel telephoned Dr. Maric's office manager, Lillian Maric, to negotiate what counsel thought was a reasonable *545 fee ($800.00 for two hours), a much lower sum than Dr. Maric's customary rate ($1400.00) for two hours, only to be told, among other things, that "this is not a swap meet" and "we don't need you lawyers, you need us." Counsel's efforts to explain Federal Rule of Civil Procedure 26 and the requirement that an expert witness charge "a reasonable fee" were futile in lowering the fee. Thereafter, both counsel commendably stipulated that Plaintiff's counsel would advance the $800.00 first-hour fee and defense counsel would pay the $600.00 balance, thereby, preserving the issue of the reasonableness of the fee for the trial court to resolve at a later date.

The next day, July 13, 1999, Plaintiff's counsel advised Dr. Maric's office that counsel had reached a stipulation to pay Dr. Maric's fee in full so that the deposition could go forward on July 14th as originally scheduled. Dr. Maric's office, however, informed counsel that the deposition had been cancelled and that patients had been scheduled to see Dr. Maric during the time set for the deposition. Plaintiff's counsel requested that the office manager reconsider and explained that if Dr. Maric cancelled the deposition, it

would be without his consent and despite his objection. Thereafter, Dr. Maric's office billed defense counsel's law firm, Lewis and Roca, LLP, for the cancellation fee of $1400.00 because the law firm actually scheduled the deposition. Defense counsel requests that this Court order Plaintiff's counsel or Plaintiff to pay the subject cancellation fee. Plaintiff's counsel refuses. The bill remains unpaid.

In late August, Plaintiff's counsel rescheduled Dr. Maric's deposition for two hours on September 2, 1999. Dr. Maric's office did not require the aforesaid cancellation fee be paid in advance but did require prepayment of a new deposition fee of $1400.00. An initial Court hearing was held on Plaintiff's motion on August 31st, 1999 but was continued so that counsel could provide the Court with additional information. Immediately after this Court hearing, Plaintiff's counsel personally delivered a check for $1400.00 to the doctor's office, reserving the right to challenge the reasonableness of this deposition fee at a later time. Dr. Maric's deposition took place on September 2, 1999. Although Plaintiff's counsel had scheduled two hours, the deposition lasted only one hour at Mr. Ryder's discretion who asked all but six of the questions posed to Dr. Maric. The doctor, however, had reserved a full two hours on his office calendar for the deposition based on the amount of time Plaintiff's counsel requested, and was apparently fully prepared to attend the full two hours.

Plaintiff's pending motion seeks reimbursement from Defendant of $1,000.00 of the $1400.00 he prepaid for the September 2, 1999 deposition. In other words, Plaintiff's counsel will pay Dr. Maric a "reasonable" fee of $400.00 for one hour of the scheduled two-hour deposition. Plaintiff's counsel does not believe he should be charged for the second hour which the lawyers did not use. At oral argument, Defendant argued that (1) $800.00 for the first hour and $600.00 per hour thereafter is a reasonable fee for Dr. Maric to charge an attorney for a deposition, (2) Plaintiff is not indigent and that a "manifest injustice" would not occur by requiring Plaintiff to pay Dr. Maric whatever the Court deems to be reasonable, (3) Plaintiff's counsel should be required to pay for the full two hours reserved for the doctor's deposition, and (4) Plaintiff or his counsel, not Lewis and Roca, should pay the entire $1400.00 cancellation fee that Dr. Maric charged defense counsel's law firm for the first deposition scheduled for July 14, 1999.

## THE LAW

Federal Rule of Civil Procedure 26(b)(4)(C) governs the pending dispute and provides, in relevant part, as follows:

> (C). Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision.

*Id.*

[1] What constitutes a "reasonable fee" for purposes of Rule 26(b)(4)(C) lies within the Court's sound discretion. *See,* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* Civil 2d, § 2034 at 469--470 (2d ed.1994) (stating that "[a]lthough *546 the rule is mandatory in the sense that the court may not entirely refuse to direct payment, it is up to the district court to determine what is a reasonable fee. The courts have deplored the paucity of authority on the subject, but have resisted efforts by experts to charge opposing parties unreasonable amounts.")

Although several other jurisdictions have addressed the issue of the reasonableness of an expert's deposition fee, counsel have not provided to the Court, nor has the Court discovered, any Ninth Circuit or District of Arizona decisions on the issue. [FN2] *See, Hose v. Chicago & North Western Transp., Co.,* 154 F.R.D. 222 (D.C.Iowa 1994)(fee of $800.00 per hour charged by neurologist was unreasonable, reduced to $400.00); *Dominguez v. Syntex Laboratories, Inc.,* 149 F.R.D. 166 (D.C.Ind.1993)(fees of $800.00 and $860 per hour for deposition testimony deemed "grossly excessive"); *Jochims v. Isuzu Motors, Ltd.,* 141 F.R.D. 493 (D.C.Iowa 1992)(Court refused to direct Plaintiff's expert be compensated at the rate of $500.00 per hour by defense counsel, where expert only charged Plaintiff's counsel $250.00); *Anthony v. Abbott Laboratories,* 106 F.R.D. 461 (D.C.R.I.1985) (Plaintiff's expert not entitled to a deposition fee of $420 per hour); *Bowen v. Monahan,* 163 F.R.D. 571 (D.C.Neb.1995)(disapproving medical toxicology expert's $3000.00 fee to appear at deposition disapproved and reducing fee to $1500.00).

> FN2. Arizona has a very similar rule establishing a reasonable expert witness fee for time spent in responding to discovery. See, Rule 26(b)(4)(C), Arizona Rules of Civil Procedure. There are, however, no published Arizona appellate decisions interpreting this rule.

The few courts that have discussed the issue, however, have noted the "continuing escalation of expert witness fees and the all too frequent attitude of experts

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

188 F.R.D. 543  
(Cite as: 188 F.R.D. 543, *546)

Page 16

that their fees should be set at the maximum-the-traffic-will-bear is of great concern," *Jochims*, 141 F.R.D. at 493, and "[i]n the final analysis, the mandate of Rule 26(b)(4)(C) is not that an adverse expert will be paid his heart's desire, but that he will be paid 'a reasonable fee.' " *Anthony*, 106 F.R.D. at 465.

[2] Although few cases discuss the issue of what constitutes a "reasonable" expert fee, those cases addressing the issue have set forth seven factors to consider in determining the reasonableness of a fee: (1) the witness's area of expertise; (2) the education and training required to provide the expert insight which is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality, and complexity of the discovery responses provided; (5) the fee actually charged to the party who retained the expert; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to assist the court in balancing the interests implicated by Rule 26. *U.S. Energy Corp. v. NUKEM, Inc.*, 163 F.R.D. 344 (D.Colo.1995); *Goldwater v. Postmaster General of the United States*, 136 F.R.D. 337 (D.Conn.1991); *Jochims*, 141 F.R.D. at 493; *Hose*, 154 F.R.D. at 225-226.

[3] After analyzing these seven factors, the Court concludes that Dr. Maric's deposition fees are unreasonably high. Initially, the Court notes that Dr. Maric is unquestionably a highly skilled and knowledgeable expert witness as he is a board-certified orthopedic surgeon, specializing in the spine and practicing medicine since 1986. Clearly, he has completed significant higher education beyond college including, but not limited to, graduation from medical school, successful completion of an orthopedic residency program at Maricopa Medical Center in Phoenix, and a one-year spinal surgery fellowship in California, all of which are set forth on his curriculum vitae. The third factor, however, the prevailing rates of other comparably respected available experts, troubles the Court.

Defense counsel has provided to the Court as Exhibit A a fee schedule of four local orthopedic surgeons who frequently serve as expert witnesses in casualty litigation. Defense counsel claims that their fees are representative of what experts charge for depositions in the Phoenix area. Plaintiff's counsel neither disputes nor has he provided conflicting evidence to the Court. Dr. Dennis Crandall, Plaintiff's expert herein, charges the highest rate at $1000.00 per hour; Dr. Glen Bair the lowest at $600.00 *547 per hour; and the average of the four is the rate of $775.00 per hour. Most of the identified experts charge (unknown as to Dr. Bair as his charges appear to vary) significantly less for consulting with a retaining lawyer or preparing the expert for a deposition than the experts charge for a deposition taken by adverse counsel. [FN3] Specifically, Dr. Maric charges the retaining attorney $400.00 per hour for a medical/legal consultation and $400.00 per hour for preparing him for his deposition. Dr. Maric, however, charges adverse counsel a significantly higher fee, $800.00 for the first hour and $600.00 per hour thereafter, for a deposition even though the subject matter, issues, and questions are usually the same or similar to those which the retaining attorney asks during the consultation. [FN4] The physicians charge even lower rates per hour to their patients for office visits. For example, Dr. Maric charges his patients between $380.00 to $440.00 per hour for office visits. [FN5] Thus, the Court concludes that Dr. Maric's fee schedule likely is based, in large part, upon with whom the expert is dealing, i.e. retaining counsel, adverse counsel, or his patient. Moreover, the Court infers from the evidence that Dr. Maric charges significantly higher fees to discourage lawyers from involving the doctor in the discovery process and that a mindset exists in Dr. Maric's office that the lawyers need Dr. Maric's expertise more than he needs them so he may charge adverse counsel whatever he deems appropriate. This extortionist practice can not be condoned by the Court.

> FN3. The Court realizes that there are a small percentage of cases wherein a treating or consulting physician's deposition is taken to preserve his/her testimony if the witness is unavailable for trial. Those fees, if different, have not been provided to the Court.
> 
> FN4. Exhibit A shows a consultation charge of $400.00 per hour and a deposition charge of $800.00 for the first hour and $600.00 per hour thereafter.
> 
> FN5. The Court has not been provided with what is actually paid *vis a vis* what is charged. It is common knowledge that in these times of managed health care, insurers routinely significantly reduce the amount paid to physicians for patient care.

By the same token, the Court recognizes that depositions of an adverse expert are, at times, stressful and, unfortunately, usually adversarial in nature. Moreover, depositions require better preparation and more thoughtful and precise answers by the deponent than a casual office visit with retaining counsel or a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

188 F.R.D. 543
(Cite as: 188 F.R.D. 543, *547)

Page 17

patient. Thus, the Court finds it reasonable to charge a modestly higher fee for a deposition taken by adverse counsel but not two or more times the cost for a medical/legal consultation. [FN6]

> FN6. The Court notes that Dr. Crandall charges nearly **6 times more** for a deposition than he does for a private consultation with an attorney, i.e. $175.00 per hour v. $1000.00 per hour.

Although the market may bear a higher rate in this community for physician deposition fees and the local legal culture may willingly tolerate and pay whatever doctors charge as evidenced by the paucity of decisions in this area in Arizona, the Court is compelled to enforce the Federal Rules of Civil Procedure and to order that only a reasonable fee be paid as a part of the Court's obligation "to patrol the battlefield to insure fairness" and to eliminate "extortionate fee setting." *See, Anthony,* 106 F.R.D. at 465. The Court FINDS that no reasonable relationship exists between the deposition services Dr. Maric rendered and the fee which he charged. The Court FURTHER FINDS that Dr. Maric's deposition fees, $1400.00 for 2 hours, are grossly unreasonable. The Court FURTHER FINDS that the sum of $450.00 per hour for Dr. Maric's time for a deposition in this case is a reasonable deposition fee. Thus, the Court will order the Defendant to reimburse Plaintiff's counsel at the rate of $450.00 per hour as hereinafter set forth.

[4] Next, the Court considers Plaintiff's claim that it would be manifestly unjust to require Plaintiff to pay any fee for Dr. Maric's deposition. After a review of Plaintiff's affidavit, the Court cannot find that Plaintiff is indigent or that requiring him to pay a deposition fee incurred in litigation that he voluntarily initiated would create an undue hardship on him. Plaintiff, a dentist by training and education, claims he is disabled and unable to receive income from his labor *548 (which are apparently two of the primary disputed issues in this litigation). He verifies in his affidavit that he receives $3564.41 per month from the sale of his dental practice in 1994. Additionally, he received a substantial settlement from a "UNUM" (presumably either an uninsured or underinsured motorist) claim or policy in 1996. Although Plaintiff may have difficulty budgeting his monthly income to pay his monthly debts, this is not a case in which a manifest injustice would occur were Plaintiff required to pay an expert's reasonable deposition fee. Accordingly, the Court will deny Plaintiff's request that he be reimbursed all of Dr. Maric's deposition fees.

[5] Plaintiff's counsel also requests that the Court order that he be responsible for only the cost of the one hour that the September 2, 1999 deposition lasted. He does not dispute that he initially reserved a full two hours on the doctor's office calendar for the deposition, paid for two hours in advance, and that he, not the doctor nor adverse counsel, chose to conclude the deposition after only one hour. There is no evidence that either the doctor or defense counsel contributed to the early termination of the deposition. Furthermore, Dr. Maric was willing and available to be questioned for the full two hours if Plaintiff's counsel had elected to do so. Plaintiff's counsel argues, however, that Dr. Maric was freed-up an hour earlier than expected wherein he could have, and perhaps did, attend to patient care or perform other duties related to his practice of medicine. The Court finds this argument unpersuasive.

The Court concludes that because Plaintiff's counsel voluntarily reserved two hours on the doctor's calendar for the subject deposition, the doctor and office manager reasonably relied on counsel's representation that the deposition would last two hours so that no other medical matters were scheduled during the second hour, and there was no advance notice that the deposition would end earlier than anticipated, it is reasonable for Plaintiff's counsel to reasonably compensate Dr. Maric for the second hour. Any windfall in this situation to the doctor as a result of the decision of Plaintiff counsel to terminate the deposition earlier than he anticipated should inure to the benefit of the doctor who cleared his calendar. Accordingly, the Court will deny Plaintiff's request to pay only for one hour.

Finally, Defendant requests the Court to order Plaintiff's counsel or Plaintiff to pay the bill sent to Lewis & Roca for the $1400.00 cancellation fee for the first deposition setting on July 14th, 1999. The Court views this dispute as collateral to the subject discovery dispute and between Dr. Maric and defense counsels' law firm. Plaintiff's counsel has made it quite clear that he objected to Dr. Maric's office manager's unilateral decision to cancel the deposition, especially after all counsel herein had reached a compromise agreement of the deposition to allow the deposition to go forward as scheduled. Moreover, this Court has no jurisdiction at this time over Dr. Maric and elects not to involve itself in this collateral dispute involving a nonparty wherein it is unable to issue appropriate orders over all concerned regarding the matter. If the law firm or defense counsel do not feel they owe the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

188 F.R.D. 543
(Cite as: 188 F.R.D. 543, *548)

Page 18

bill or any portion thereof, they may decline to pay it. Dr. Maric would then be forced to further evaluate the reasonableness of his cancellation fee in light of the patient care that his staff substituted during the time the deposition had been set. If Dr. Maric elects to bring a claim against either or both counsel herein in State court for a resolution of the matter, a State trial judge may enter appropriate orders on the reasonableness of the fee, the liability, if any, for it and award attorney's fees to the prevailing party. See, A.R.S § 12-341.01. Accordingly, the Court will deny defense counsel's request in this regard without prejudice.

Accordingly,

**IT IS ORDERED** bifurcating from this proceeding today any ruling and argument on Defendant's Motion To Reduce Plaintiff's Experts' Fees (doc. # 133).

**IT IS FURTHER ORDERED** that Plaintiff shall file a response to Defendant's Motion To Reduce Plaintiff's Experts' Fees by 5:00 p.m. on October 6, 1999. A reply, if any, shall be filed by 5:00 p.m. on October 18, 1999. The Court will rule on the matter *549 thereafter without oral argument unless either counsel requests oral argument in writing within 10 days hereof.

**IT IS FURTHER ORDERED** that Plaintiff's Motion For Protective Order Re: Expert Fee Of Dr. Maric (doc. # 98) is **GRANTED** and that Defendant shall reimburse Plaintiff's counsel the sum of $500.00 [$1400.00 paid less the sum of $900.00 ($450.00 x 2 hours) ] within 30 days of the date of this Order. Absent good cause shown, the failure to timely pay those fees ordered reimbursed herein may result in sanctions being imposed by the Court including, but not limited to, an Order precluding the Defendant from using Dr. Maric or his deposition testimony at trial.

**IT IS FURTHER ORDERED** denying Plaintiff's counsel's request that all reasonable deposition fees charged by Dr. Maric be waived on the grounds that a manifest injustice would allegedly occur were Plaintiff required to pay Dr. Maric's reasonable deposition fees.

**IT IS FURTHER ORDERED** denying Plaintiff's counsel's request that he not be required to pay for two hours of scheduled deposition time for Dr. Maric's deposition.

**IT IS FURTHER ORDERED** denying without prejudice Defendant's request that Dr. Maric's $1400.00 deposition cancellation fee by paid by either Plaintiff or his counsel.

188 F.R.D. 543

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

105 F.R.D. 577
1 Fed.R.Serv.3d 469
(Cite as: 105 F.R.D. 577)

Page 19

United States District Court,
E.D. New York.

In re "AGENT ORANGE" PRODUCT
LIABILITY LITIGATION.
Anna LILLEY, Plaintiff,
v.
DOW CHEMICAL COMPANY, et al., Defendants.
Gerald HOGAN, Plaintiff,
v.
DOW CHEMICAL COMPANY, et al., Defendants.

MDL No. 381.
Nos. CV-80-2284, CV-81-0991.

April 17, 1985.

Defendant chemical companies in class action appealed from magistrate's order that they produce three doctors for deposition by plaintiffs in individual companion actions before District Court as part of same multidistrict litigation involving "Agent Orange." The District Court, Weinstein, Chief Judge, held that: (1) plaintiffs could not elicit one doctor's testimony on existence of immunological effects of dioxin exposure in persons exposed at Seveso, Italy; (2) plaintiffs could question that doctor on his evaluation of class representative who allegedly suffered from immune system deficiency similar to disease from which one plaintiff allegedly suffered; (3) plaintiffs could depose toxicologist as to his opinion on existence of causation for class representatives' alleged medical problems; (4) plaintiffs could not depose toxicologist on issue of causation in general; (5) plaintiffs could not depose third doctor on causal relationship between exposure and chloracne; and (6) discovery was conditioned on plaintiffs' payment of reasonable experts' fees and expenses incurred in discovery.

Affirmed as modified.

West Headnotes

[1] Federal Civil Procedure ⚖1275
170Ak1275

Federal Rule of Civil Procedure governing scope of discovery for experts' trial preparation covers experts retained by party for trial preparation and closely related case that is before court as part of same multidistrict litigation. Fed.Rules Civ.Proc. Rule 26(b)(4), 28 U.S.C.A.

[2] Federal Civil Procedure ⚖1275
170Ak1275

Discretion of a party to execute the trial strategy it deems appropriate to defend its case extends to changing the status of an expert as either one who is expected to testify at trial or one who was retained in anticipation of litigation or preparation for trial, within the limits of good faith and the scheduling orders of the court. Fed.Rules Civ.Proc. Rule 26(b)(4)(A, B), 28 U.S.C.A.

[3] Federal Civil Procedure ⚖1261
170Ak1261

Purpose of the multidistrict litigation process is to facilitate discovery and avoid wasted effort.

[4] Federal Civil Procedure ⚖1275
170Ak1275

In multidistrict litigation involving "Agent Orange," discovery of experts retained in class action was permitted in companion cases involving individuals before the court as part of the same multidistrict litigation, in that such individuals would have to devote such enormous time and resources to duplicating experts' efforts that obtaining the information by other means was "impracticable." Fed.Rules Civ.Proc. Rule 26(b)(4)(B), 28 U.S.C.A.

[5] Federal Civil Procedure ⚖1405
170Ak1405

In two individual actions closely related to class action before District Court as part of multidistrict litigation involving "Agent Orange," individuals were not permitted to depose doctor retained by defendants for trial preparation in class action as to the existence of immunological effects of dioxin exposure in persons exposed at Seveso, Italy, since discussion of the Seveso experience was available in the literature. Fed.Rules Civ.Proc. Rule 26(b)(4)(B), 28 U.S.C.A.; Fed.Rules Evid.Rule 803(18), 28 U.S.C.A.

[6] Federal Civil Procedure ⚖1405
170Ak1405

In two individual actions closely related to class action before District Court as part of multidistrict litigation involving "Agent Orange," individuals were permitted

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

105 F.R.D. 577
(Cite as: 105 F.R.D. 577)

Page 20

to question doctor retained by defendants for trial preparation in class action on his evaluation of a class representative who allegedly suffered from an immune system deficiency similar to a disease from which one of the individuals allegedly suffered, since such information was not readily available from any other source. Fed.Rules Civ.Proc. Rule 26(b)(4)(B), 28 U.S.C.A.

[7] Federal Civil Procedure ⚖1405
170Ak1405

In two individual actions closely related to class action before District Court as part of multidistrict litigation involving "Agent Orange," individuals could depose toxicologist, who was retained by defendants for trial preparation in class action and had developed detailed exposure profile for each class representative, as to his opinion on the existence of causation for class representatives' alleged medical problems, since such information could not be obtained readily through other means. Fed.Rules Civ.Proc. Rule 26(b)(4)(B), 28 U.S.C.A.

[8] Federal Civil Procedure ⚖1405
170Ak1405

In two individual actions closely related to class action before District Court as part of same multidistrict litigation involving "Agent Orange," individuals could not depose doctor retained by defendants for trial preparation in class action on the issue of causation in general, since individuals did not demonstrate a practical inability to obtain such information by other means, including extensive literature on the subject. Fed.Rules Civ.Proc. Rule 26(b)(4)(B), 28 U.S.C.A.

[9] Federal Civil Procedure ⚖1405
170Ak1405

In two individual actions closely related to class action before District Court as part of multidistrict litigation involving "Agent Orange," individuals were not entitled to depose doctor retained by defendants for trial preparation in class action on the causal relationship between exposure and chloracne, since individuals did not show practical inability to obtain facts and opinions on the subject by other means, including extensive literature on the subject. Fed.Rules Civ.Proc. Rule 26(b)(4)(B), 28 U.S.C.A.

[10] Federal Civil Procedure ⚖1413
170Ak1413

Facts known and opinions held by expert witnesses prior to their initial consultation or employment by defendants in class action before District Court as part of multidistrict litigation involving "Agent Orange" could be obtained by plaintiffs in individual companion actions under Federal Rules of Civil Procedure governing oral depositions and subpoenas. Fed.Rules Civ.Proc. Rules 30, 45, 28 U.S.C.A.

[11] Federal Civil Procedure ⚖2738
170Ak2738

Plaintiffs, in individual companion actions before District Court as part of same multidistrict litigation involving "Agent Orange" as class action, were required to pay reasonable fees and expenses for deposing expert witnesses retained by defendants in class action for trial preparation; to extent that plaintiffs' request for depositions sought facts known and opinions held by experts prior to their initial consultation or employment by defendants, experts' entitlement to reasonable fee arose under common-law precedent and District Court's authority under rule governing scope of the Federal Rules of Civil Procedure. Fed.Rules Civ.Proc. Rules 1, 26(b)(4)(B), (c), 30, 30(d), 45(b), 28 U.S.C.A.

[12] Federal Civil Procedure ⚖2738
170Ak2738

If litigant seeks to obtain facts or opinions acquired by expert in furtherance of his or her expertise, as distinct from knowledge possessed by that person as an ordinary actor in or viewer of events pertinent to case, then litigant must pay expert a reasonable expert's fee. Fed.Rules Civ.Proc. Rules 26(b)(4), (c), 30(d), 45(b), 28 U.S.C.A.

[13] Federal Civil Procedure ⚖2738
170Ak2738

If plaintiffs, in individual companion actions before District Court as part of same multilitigation involving "Agent Orange" as class action, deposed doctor retained by defendants for trial preparation purposes in class action, seeking knowledge not barred under Federal Rule of Civil Procedure governing scope of discovery of an experts' trial preparation, plaintiffs had to pay doctor a reasonable fee in advance based on doctor's normal rates as an expert. Fed.Rules. Civ.Proc. Rule 26(b)(4), (c), 28 U.S.C.A.

[14] Federal Civil Procedure ⚖2738
170Ak2738

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Depositions of two doctors retained by defendants for trial preparation in class action to be taken by plaintiffs in individual companion actions before District Court as part of same multidistrict litigation involving "Agent Orange" were conditioned on plaintiffs' payment in advance of a reasonable fee for expenses and deposition and travel time to each expert based on his normal expert witness rate, and of a pro rata share of the expense reasonably incurred by defendants in class action in obtaining facts and opinions from each expert after they were retained by defendants. Fed.Rules Civ.Proc. Rule 26(b)(4), (c), 28 U.S.C.A.

*579 Stephen J. Schlegel, Schlegel & Trafelet, Ltd., Chicago, Ill., Thomas Henderson, Henderson & Goldberg, Pittsburgh, Pa., Phillip E. Brown, Hoberg, Finger, Brown, Cox & Molligan, San Francisco, Cal., Stanley Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, Ohio, John Q. O'Quinn, O'Quinn & Hagans, Houston, Tex., Neil R. Peterson and Gene Locks, Greitzer & Locks, Philadelphia, Pa., Newton B. Schwartz, Houston, Tex., Irving Like, Reilly, Like and Schneider, Babylon, N.Y., David J. Dean, Dean, Falanga & Rose, Carle Place, N.Y., Aaron Twerski, Hempstead, N.Y., of counsel, Robert Taylor, Jr., Ashcraft & Gerel, Washington, D.C., for plaintiffs.

Leonard Rivkin, Rivkin, Leff, Sherman & Radler, Garden City, N.Y., Philip Pakula, Townley & Updike, Wendell B. Alcorn, Jr., Cadwalader, Wickersham & Taft, William Krohley, Kelley, Drye & Warren, Thomas Beck, Arthur, Dry & Kalish, Richard Goldstein, Shea & Gould, New York City, of counsel; David R. Gross, Budd, Larner, Kent, Gross, Picillo & Rosenbaum, New York City, Paul V. Esposito, Lewis, Overbeck & Furman, Chicago, Ill., Henry G. Miller, Clark, Gagliardi & Miller, White Plains, N.Y., for defendants.

Arvin Maskin, Dept. of Justice, Washington, D.C., for Third-Party Defendant United States.

MEMORANDUM and ORDER

WEINSTEIN, Chief Judge:

Defendant chemical companies have appealed from the Magistrate's Order that defendants produce Drs. Emil J. Bardana, Rolf Hartung and James S. Taylor for deposition by plaintiffs in the *Lilley* and *Hogan* cases, part of the complex "*Agent Orange*" multidistrict litigation. *Lilley v. Dow Chemical Co.*, CV- 80-2284 (E.D.N.Y.); *Hogan v. Dow Chemical Co.*, CV-81-0991 (E.D.N.Y.). For the reasons indicated below, the Magistrate's Order is affirmed as modified; discovery is conditioned on plaintiffs' payment of reasonable experts' fees and expenses incurred in discovery.

The three doctors previously examined two of the class representatives in the class action certified in *Ryan v. Dow Chemical Co.*, 79-C-747 (E.D.N.Y.). That action has been settled. *See In re "Agent Orange" Product Liability Litigation*, M.D.L. No. 381, slip op. (E.D.N.Y. Jan. 7, 1985); 597 F.Supp. 740 (E.D.N.Y.1984). The experts *580 have not examined the plaintiffs in either *Lilley* or *Hogan* or in any of the many other individual opt-out and civilian actions still pending before the court in the M.D.L. proceedings. Nor have any of the three physicians been consulted by the defendants in connection with any of the pending individual suits.

Rule 26(b)(4)(A) of the Federal Rules of Civil Procedure governs discovery of an expert who will testify at trial. Rule 26(b)(4)(B) covers an expert "retained or specially employed" by a party "in anticipation of litigation or preparation for trial" but who is not expected to testify at trial. Rule 26(b)(4)(C) provides for assessment of fees and expenses incurred in discovery under Rule 26(b)(4)(A) and (B). Rules 30 and 45 govern discovery by deposition that falls outside the scope of Rule 26(b)(4).

None of the doctors has been involved in pretrial preparation in the *Lilley* and *Hogan* cases. It does not necessarily follow, however, that Rule 26(b)(4) does not control discovery of these experts. These three experts were retained by defendants "in anticipation of litigation or [preparation] for trial" in *Ryan*, a companion case in this multidistrict litigation that raised nearly identical legal and factual issues. *See In re "Agent Orange" Product Liability Litigation*, 597 F.Supp. 740 (E.D.N.Y.1984). The defendants in the *Lilley* and *Hogan* actions are also defendants in the *Ryan* class action; the plaintiff in *Lilley* is a *Ryan* class member who opted out of the class.

One "purpose of the M.D.L. process is to assemble data through discovery that can be used in any related litigation without the need for duplicative efforts." *Id.*, 597 F.Supp. at 770. The *Lilley* and *Hogan* plaintiffs learned of the identity of these experts and their role in defendants' trial preparation through the M.D.L. discovery mechanism. None of the three experts was previously deposed.

[1] Given the legal and factual similarities, the involvement of many of the same parties, and the

procedural realities of the M.D.L. process, it is reasonable to interpret Rule 26(b)(4) to reach experts retained by a party for trial preparation in a closely related case that is before the court as part of the same multidistrict litigation. *Cf. Hermsdorfer v. American Motors Corp.*, 96 F.R.D. 13, 15 (W.D.N.Y.1982) ("applying Rule 26(b)(4)(B) to expert information obtained for the purpose of preparing for *numerous* lawsuits, some perhaps already filed") (emphasis in original); *In re Sinking of Barge "Ranger I"*, 92 F.R.D. 486, 489 (S.D.Tex.1981) ("The test to be applied is whether, in light of the nature of the [information] and factual situation in a particular case, the experts and their information can fairly be said to have been obtained or acquired because of the prospect of litigation."). *But cf. Grinnell Corp. v. Hackett,* 70 F.R.D. 326, 333 (D.R.I.1976) (Rule 26(b)(4) applies when "information sought was obtained for the very purpose of preparing for the litigation in question").

The defendants apparently have not yet decided whether they will call these three doctors at trial in either *Lilley v. Dow* or *Hogan v. Dow*. No trial date has been set and no pretrial order has been issued in either case. In the light of serious summary judgment motions pending in both cases, it cannot even be said at this time that there will be a trial.

[2] A party "is permitted to execute the trial strategy it deems appropriate to defend its case." *Mantolete v. Bolger,* 96 F.R.D. 179, 182 n. 2 (D.Ariz.1982). This discretion "extends to changing the status of an expert," *id.,* within the limits of good faith and the scheduling orders of the court. Because these experts at this time are not "expected to testify at trial," Rule 26(b)(4)(B) applies rather than Rule 26(b)(4)(A).

Rule 26(b)(4)(B) requires plaintiffs to make "a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." *Compare Roesberg v. Johns-Manville Corp.,* 85 F.R.D. 292, 299 (E.D.Pa.1980) *and Pearl Brewing Co. v. Joseph *581 Schlitz Brewing Co.,* 415 F.Supp. 1122, 1138-40 (S.D.Tex.1976) *with Marine Petroleum Co. v. Champlin Petroleum Co.,* 641 F.2d 984, 993-97 (D.C.Cir.1980).

[3][4] As already observed, the *Ryan, Lilley,* and *Hogan* cases all are part of the same multidistrict litigation. The purpose of the M.D.L. process is to facilitate discovery and avoid wasted effort. Discovery of the experts retained in *Ryan* therefore should be permitted in companion cases like *Lilley* and *Hogan* when those plaintiffs would have to devote such enormous time and resources to duplicating the experts' efforts that obtaining the information by other means is "impracticable."

[5] Dr. Bardana's deposition is sought for two reasons. First, plaintiffs seek to elicit his testimony on the existence of immunological effects of dioxin exposure in persons exposed at Seveso, Italy. This aspect of their request is denied to the extent that it falls within Rule 26(b)(4), *see infra,* because plaintiffs have not shown a practical inability to obtain facts and opinions on the subject by other means. Discussion of the Seveso experience is available in the literature. *See* Fed.R.Evid. 803(18) (material from scientific literature admissible as exception to hearsay rule).

[6] Second, plaintiffs seek to question Dr. Bardana on his evaluation of a class representative who allegedly suffered from an immune system deficiency similar to a disease from which the plaintiff in *Hogan* allegedly suffers. Because this information is not readily available from any other source, discovery on this issue is permitted.

[7] Dr. Hartung, a toxicologist, developed a detailed exposure profile for each class representative. Plaintiffs seek his opinion on the existence of causation for the class representatives' alleged medical problems. This information cannot be obtained readily through other means. Plaintiffs may depose this expert for this purpose.

[8] Plaintiffs seek to depose Dr. Hartung on the issue of causation in general. Disclosure is denied. Plaintiffs have not demonstrated a practical inability to obtain information on this issue by other means including the extensive literature on the subject.

[9] Plaintiffs seek Dr. Taylor's testimony on the causal relationship between exposure and chloracne. Disclosure is denied. Plaintiffs have not shown a practical inability to obtain facts and opinions on this subject by other means. There is extensive literature on this subject.

[10] Rule 26(b)(4) applies only to "[d]iscovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and *acquired or developed* in anticipation of litigation or preparation for trial * * *." (Emphasis supplied.) Some of the information sought by plaintiffs from Drs. Bardana, Hartung and Taylor and available pursuant to the Magistrate's order as now

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

105 F.R.D. 577                                                                                     Page 23
(Cite as: 105 F.R.D. 577, *581)

modified apparently consists of "facts known and opinions held by" them prior to their initial consultation or employment by defendants in the *"Agent Orange"* litigation. Discovery of such prior knowledge may be obtained under Rules 30 and 45 of the Federal Rules of Civil Procedure. *Norfin v. International Business Machines Corp.*, 74 F.R.D. 529, 532-34 (D.Colo.1977).

[11] Because plaintiffs' discovery request is covered in large part by Rule 26(b)(4)(B), they are required by that Rule to pay reasonable fees and expenses. *See* Fed.R.Civ.P. 26(b)(4)(C); *Bosse v. Litton Unit Handling Systems*, 646 F.2d 689, 695 (1st Cir.1981); *Marine Petroleum Co. v. Champlin Petroleum Co.*, 641 F.2d 984, 989-90 (D.C.Cir.1980); *Cotton v. Consolidation Coal Co.*, 457 F.2d 641, 646-47 (6th Cir.1972); *Keith v. Van Dorn Plastic Machinery Co.*, 86 F.R.D. 458, 460 (E.D.Pa.1980).

[12] To the extent that plaintiffs' request for depositions falls outside Rule 26(b)(4) and is covered under Rule 30, the expert's entitlement to a reasonable expert's fee arises under common law precedent and the court's authority under Rule 1 *582 of the Federal Rules of Civil Procedure. *Cf.* Fed.R.Civ.P. 26(c), 30(d), 45(b). The expert not only suffers a loss of time from his or her job, like an ordinary witness; he or she also suffers a loss in divulging dearly won expertise. An expert's knowledge is his or her stock in trade and the expert has a property right to that knowledge. If a litigant seeks to obtain facts or opinions acquired by the expert in furtherance of his or her expertise, as distinct from knowledge possessed by that person as an ordinary actor in or viewer of events pertinent to the case, then the litigant must pay the expert a reasonable expert's fee. *See, e.g., Wright v. Jeep Corp.*, 547 F.Supp. 871, 877 (E.D.Mich.1982); *United States v. Certain Parcels of Land*, 15 F.R.D. 224, 235 (S.D.Cal.1953); *Walsh v. Reynolds Metals Co.*, 15 F.R.D. 376, 378 (D.N.J.1954); *Lynette D. v. Carlton W.*, 112 Misc.2d 738, 447 N.Y.S.2d 365 (N.Y.Fam.Ct.1982); Graham, Discovery of Experts Under Rule 26(b)(4) of the Federal Rules of Civil Procedure: Part Two, An Empirical Study and a Proposal, 1977 Ill.L.Forum 169, 200; Maurer, Compelling the Expert Witness: Fairness and Utility Under the Federal Rules of Civil Procedure, 19 Ga.L.Rev. 71, 112-18 (1984); Meyer, Some Problems Concerning Expert Witnesses, 42 St. John's L.Rev. 317, 325 (1968). *Cf., e.g., CF & I Steel Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 713 F.2d 494 (9th Cir.1983) (requiring tender of fee with subpoena under Fed.R.Civ.P. 45(c) but leaving issue of fee amount open); *United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364 (9th Cir.) (litigant can be ordered to reimburse nonparty witness for costs of discovery under Fed.R.Civ.P. 26(c) and 45(b)), *cert. denied*, 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1329 (1982); *Kaufman v. Edelstein*, 539 F.2d 811, 817, 821 n. 15 (2d Cir.1976) (affirming court's power to compel expert witness's testimony on previously acquired facts and opinions but leaving compensation issue open). *See generally* Friedenthal, Discovery and Use of an Adverse Party's Expert Information, 14 Stan.L.Rev. 455, 479-81 (1962).

Rule 45(c) of the Federal Rules of Civil Procedure states that a litigant must tender to a witness subpoenaed for deposition "the fees for one day's attendance and the mileage allowed by law." By statute, the normal witness fee is $30 per day. 28 U.S.C. § 1821. Decisions on assessment of costs against a losing party under 28 U.S.C. § 1920 have refused to award a higher expert fee as costs. *See, e.g., Henkel v. Chicago, St. Paul, Minn. & Ohio Ry.*, 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386 (1932); *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir.) (stating general rule but applying exception), *cert. dismissed*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981). Exceptions to the rule exist. *See, e.g., id.; J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 102 F.R.D. 73, 82-90 (E.D.La.1984). Because taxing of costs is not involved here, decisions in that context are inapposite.

## CONCLUSION

[13] If plaintiffs depose Dr. Taylor seeking knowledge not barred under Rule 26(b)(4), they must pay Dr. Taylor a reasonable fee in advance based on his normal rates as an expert.

[14] Deposing of Drs. Bardana and Hartung is conditioned on plaintiffs' payment (1) in advance of a reasonable fee for expenses and deposition and travel time to each expert based on his normal expert witness rate, and (2) of a *pro rata* share of the expense reasonably incurred by the defendants in obtaining facts and opinions from each expert after they were retained by the defendants. The amount of the latter payment will be determined by the Magistrate upon application of the defendants after each expert has been deposed. Until then it will not be clear what proportion of the expert's newly acquired knowledge already paid for by the defendants is being sought and acquired by the plaintiffs. Defendants will pay their own attorney fees. *See* Fed.R.Civ.P. 26(b)(4)(B), (C) and advisory committee notes.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

105 F.R.D. 577  
(Cite as: 105 F.R.D. 577, *582)

Page 24

The Magistrate's Order is affirmed as modified.

*583 The Clerk shall send copies of this Memorandum and Order to all parties and the Magistrate.

So ordered.

105 F.R.D. 577, 1 Fed.R.Serv.3d 469

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works