UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HEMCHANDRA SHERTUKDE | : | NO.: 3:02CV620 (MRK) |
| | : | |
| v. | : | |
| | : | |
| MTD PRODUCTS, INC. | : | MARCH 29, 2004 |

**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rules of Civil Procedure 56(c), the defendant moves for summary judgment on the basis that plaintiff has not, and cannot, establish a prima facie case by showing that at the time of the accident the subject snow thrower was in substantially the same condition as it was at the time of its manufacture and sale.

As set forth in the memorandum of law submitted in support hereof, there is undisputed evidence of a substantial change in the auger clutch control system on the snow thrower that caused the auger and impeller to move sporadically with the clutch control lever released. The defendant has asserted a defense of product alteration, and the plaintiff has produced no evidence to demonstrate that this fourteen-year-old snow thrower was in substantially the same condition at the time of the accident on February 6, 2001 as it was at time of manufacture and sale in 1987. There exists no

ORAL ARGUMENT IS REQUESTED

genuine issue as to any material fact, and the defendant is entitled to judgment as a matter of law.

                    DEFENDANT,
                    MTD PRODUCTS, INC.


                    By__ ___/s/ John J. Bogdanski__ _
                        John J. Bogdanski
                        Howd & Ludorf
                        65 Wethersfield Avenue
                        Hartford, CT  06114
                        (860) 249-1361
                        (860) 249-7665 (Fax)
                        ct06217

## **CERTIFICATION**

       This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 29th day of March, 2004.

Gerald S. Sack, Esquire
Marc H. Vidone, Esquire
Sack, Spector & Karsten
836 Farmington Avenue
West Hartford, CT 06119

David W. Herrington, Esquire
Wegman, Hessler, Vanderburg & O'Toole
6055 Rockside Woods Blvd., Suite 200
Cleveland, OH  44131

                                                                           /s/ John J. Bogdanski
                                                                     John J. Bogdanski

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HEMCHANDRA SHERTUKDE | : | NO.: 3:02CV620 (MRK) |
| | : | |
| v. | : | |
| | : | |
| MTD PRODUCTS, INC. | : | MARCH 29, 2004 |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

**I.   BACKGROUND:**

This is a products liability claim arising from a February 6, 2001, accident involving a Yard-Man snow thrower. The plaintiff Hemchandra Shertukde sustained a partial amputation of the tip of his right ring finger when he placed his hand into the discharge chute of the Yard-Man snow thrower with the auger clutch released but with the engine running. The plaintiff claims that certain design defects in the snow thrower caused his injury. The defendant incorporates herein by reference its Local Rule 56(a)1 Statement of Facts, together with supporting exhibits, **Exhibit A** through **Exhibit K**, which the defendant has submitted in support of its Motion for Summary Judgment, Motion *in Limine* to Preclude Evidence of Proposed Alternative Design, and Motion *in* Limine to Preclude Non-Disclosed Expert Opinions and Evidence of Subsequent Snow Thrower Design.

The subject snow thrower was manufactured and distributed by the defendant MTD Products, Inc. in 1987. Mr. Shertukde has a Masters of Science in Electrical Engineering and a Ph.D. in controls and communications. (See deposition of Mr. Shertukde, **Exhibit A** to Local Rule 56(a)1 Statement, at pp.28-29.) Mr. Shertukde currently is a full Professor of Electrical and Computer Engineering at the University of Hartford. (**Exhibit A**, at 34.) Mr. Shertukde purchased the snow thrower new in 1989, and used it to clean snow from his driveway. (Id. at pp.39-40.) Mr. Shertukde was the only person to ever use the snow thrower. (Id. at p.51.) Other than occasionally being hard to start, Mr. Shertukde used the snow thrower for twelve years without any problems or incidents. (Id. at p.57.) Mr. Shertukde does not know how the condition of the snow thrower on the date of the accident compares to its condition on the date of its manufacture and sale fourteen years earlier. (Id. at p.145.)

On February 6, 2001, Mr. Shertukde was using the snow thrower to clear his driveway when the discharge chute clogged with snow. (Id. at p.77.) Mr. Shertukde released the auger clutch control lever, and observed that this caused the auger to stop turning. (Id.) On prior occasions when snow clogged in the discharge chute, Mr. Shertukde always used a stick to clear the clogged snow. (Id. at p.60.) On this day, however, Mr. Shertukde decided to use his hand to clear the discharge chute. (Id. at p.80.) Both the operator's manual and the on-product warning labels direct the operator to shut off the engine before attempting to clear snow from the discharge

chute. On prior occasions, Mr. Shertukde had always turned off the engine before attempting to clear clogged snow from the discharge chute. (Id. at p.60.) On this day, however, Mr. Shertukde left the engine running when he put his hand into the discharge chute. (Id. at pp.89-90.)

As he cleared out the clogged snow, Mr. Shertukde claims that his hand "got stuck inside the chute." (Id. at p.90.) He testified, "It got jammed in. It got held by something else inside." (Id.) The engine was still running, and Mr. Shertukde observed that the auger blades and shafts were not rotating. (Id. at pp.90-91.) He then used his left hand to turn off the ignition key and stop the engine. Mr. Shertukde pulled his hand from the discharge chute, and observed that the tip of one finger was missing. (Id. at p.92.)

Other than Mr. Shertukde, there were no witnesses to this accident. (Id. at p.117.) Mr. Shertukde has "no idea" what caused this accident. (Id. at p.101.) He does not know what part or component of the snow thrower caused his injury. (Id. at p.114.) As far as Mr. Shertukde knows, none of the snow thrower components were moving or rotating from the time that he first placed his hand into the discharge chute up to the time the injury occurred. (Id. at pp.90-91, 114.) Mr. Shertukde observed no damage to the snow thrower at the time of the accident. (Id. at p.106.)

According to Mr. Shertukde, after the date of the accident the snow thrower was never used again either by him or by anyone else in his family. (Id. at pp.102-103.)

Mr. Shertukde never attempted to repair or fix the snow thrower, and never made any changes to it. (Id. at pp.104-105.) Mr. Shertukde had the snow thrower serviced once after the accident in January of 2002. (Id. at p.105.) Other than that, the snow thrower remained in Mr. Shertukde's garage or in his shed, and was not used. (Id.)

Plaintiff's expert, Leslie Wilder, initially inspected the snow thrower at plaintiff's residence on March 27, 2003. (See expert report of Leslie Wilder, **Exhibit B** to Local Rule 56(a)1 Statement, at p.3.) At the time of the inspection, Mr. Shertukde told Mr. Wilder that no one had used the snow thrower since the date of the accident, and that no changes had been made to the machine. (See deposition of Leslie Wilder, **Exhibit C** to Local Rule 56(a)1 Statement, at p.41.) Mr. Wilder was unable to start the snow thrower, and made only a visual inspection. Mr. Wilder observed that "both the auger and drive cable adjustments were not as specified by the owner's manual, but were overly slack." (Wilder report, **Exhibit B**, at p.3.) Mr. Wilder found that "Pulling on the starter cord did not cause the impeller or auger to rotate even when the operator hand lever control was held down." (Id.). He also observed that "an auger drive idler pulley mounted inside the auger housing had partially cut its way through the right rear wall of the housing." (Id.). (See photograph of pulley through auger housing, **Exhibit D** to Local Rule 56(a)1 Statement.) Mr. Wilder did not disassemble the snow thrower at that time.

On June 5, 2003, the plaintiff's expert Leslie Wilder and the defendant's expert

Daniel Martens conducted a joint inspection of the snow thrower in Fairfield, Connecticut.  The experts found that the auger clutch control would not function to either engage or disengage the movement of the auger and impeller.  They further observed that, with the auger clutch control disengaged and the engine running, both the auger and impeller fan would move sporadically on their own.  When the snow thrower was disassembled, they found that the auger control belt was frayed and worn.  (See photograph of frayed and worn auger control belt, **Exhibit E** to Local Rule 56(a)1 Statement.)  They further found that the auger control belt was improperly routed.  The belt was so positioned that activation of the auger clutch control did not cause the auger and impeller to rotate, and it permitted the auger and impeller to move sporadically with the engine running and the auger clutch disengaged.

Plaintiff's expert Mr. Wilder found that "actuating the auger control lever did not cause the impeller and auger to rotate." (**Exhibit B**, at p.3.)  He further noted that "the impeller and auger would sporadically rotate, either gradually for a period of seconds, or rapidly in short bursts of motion." (Id.)  Mr. Wilder found that the cause of this sporadic movement was the misrouting of the auger belt.  "This is why sporadic rotation occurred with the lever released but not when the lever was actuated." (Id. at p.4.)  Mr. Wilder concluded that "In this observed condition, it is doubtful that the snow thrower could function to clear snow." (Id. at p.4.)

The defendant's expert, Mr. Martens, found that "the condition of the machine at

5

the time of my inspection revealed that the auger clutch lever would not engage the augers or impeller ('fan assembly')." (See expert report of Daniel Martens, **Exhibit F** to Local Rule 56(a)1 Statement, pp.7-8,) Mr. Martens reported, "Upon further inspection of the auger drive system, I found that the auger clutch ("fan") belt (Part #754-0282) at some point had been removed and reinstalled incorrectly; this condition would not allow the augers and impeller ("fan assembly") to engage." (Id.) He concluded that, "In my opinion, the current condition of the subject snow thrower has changed dramatically from its original design and manufacture." (Id. at p.8,)

Plaintiff's expert Mr. Wilder testified that the misrouted belt affected the ability of the auger clutch control lever to perform its function of controlling the movement of the auger and impeller. (**Exhibit C**, at pp.103-104.) He agreed that this condition most probably arose after the date of the product's manufacture and sale in 1987. (Id.). Mr. Wilder said that it was unlikely that the belt could move on its own from a position of proper routing to the position of improper routing in which he found it. (Id. at p.130.) "I would say somebody moved it." (Id.). It would take *a positive act by someone* to move the belt from its properly routed position. (Id. at pp.130-131.)

Mr. Wilder does not know when, why or by whom this auger belt was misrouted from its design location. (Id. at pp.104-105.) Because he doubts that the machine could have operated in the manner described by Mr. Shertukde with the auger belt at this misrouted location, Mr. Wilder assumes that the belt was properly positioned at

the time of the accident and inexplicably was changed at some later date.  Mr. Wilder states in his report:

> Certainly the temperature was much warmer at the time of the inspection, than at the time of the injury, and it is possible that with the belt stiffer due to cold it might have been able to drive the impeller to some degree. However, Mr. Shertukde stated that he had been clearing an approximately 26 inches of snow depth just prior to his injury.  Therefore, it is more likely that the belt moved from its proper position at the time of his accident, to its observed position on June 5 at or after the time of injury.

(**Exhibit B**, at p.4.)  Premised on this assumption that the auger belt was properly routed at the time of the accident, Mr. Wilder then opines that some *other* unknown set of mechanical conditions existed at the time of the accident which permitted the auger and impeller to move with the auger clutch control lever in its released position. (**Exhibit C**, at pp.113-114.)  Mr. Wilder cannot identify what those other, unknown mechanical conditions were.  He cannot say why those mechanical conditions occurred or when they came into existence.  (Id.).  Specifically, Mr. Wilder testified that he cannot offer an opinion that these other unknown mechanical conditions existed at the time of the product's manufacture and sale in 1987.  (Id. at p.114.)

The defendant now moves for summary judgment on the basis that plaintiff has not, and cannot, establish a prima facie case by showing that at the time of the accident the subject snow thrower was in substantially the same condition as it was at the time of its manufacture and sale.

## II. LAW AND ARGUMENT:

### A. Standard Of Review

Federal Rules of Civil Procedure 56(c) requires the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A factual dispute is "genuine" when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A "material fact" is one whose resolution will affect the ultimate determination of the case. Id. In determining whether a material issue of fact exists, the Court must resolve all ambiguities and draw all inferences against the moving party. Id. at 255, 106 S.Ct. at 2513; J.F. Feeser, Inc. v. Servi-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991). However "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Samuels v. Smith, 839 F.Supp. 959, 962 (D.Conn. 1993).

The party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that

there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256, 106 S.Ct. 1570, 94 L.Ed.2d 763 (1987); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980). Thus, once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. V. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 25 (1986). "Neither courts nor defendants should be subjected to trials which can be little more than harassment." Applegate v. Top Associates, Inc., 425 F.2d 92, 96 (2d Cir. 1970).

      B.     **Plaintiff Has Not Established A Prima Facie Case**

The plaintiff has brought this claim pursuant to the Connecticut Product Liability Act, Connecticut General Statutes §§52-572m through 52-572r. (See plaintiff's Complaint, First Count, ¶1). General Statutes §52-572p specifically limits the liability of a product seller based on product alterations.[1] In Potter v. Chicago

---

[1] Sec. 52-572p. Limitation of liability of product seller. (a) A product seller shall not be liable for harm that would not have occurred but for the fact that his product was altered or modified by a third-party unless: (1) The alteration or modification was in accordance with the instructions or specifications of the product seller; (2) the alteration or modification was made with the consent of the product seller; or (3) the alteration or modification was the result of conduct that reasonably should have been anticipated by the product seller.

9

Pneumatic Tool Co., 241 Conn. 199 (1997), the Connecticut Supreme Court set forth the respective parties' appropriate burdens of proof on product alteration within the evidentiary framework of §52-572p. They stated:

> We begin by recognizing that, as part of its prima facie case, the plaintiff must establish that the product in question was intended to and did reach the ultimate customer without substantial change in condition. *Rossignol v. Danbury School of Aeronautics, Inc.* supra, 154 Conn. 559-60; see also *Guglielmo v. Klausner Supply Co.*, 158 Conn. 308, 315-16, 259 A. 2d 608 (1969) (plaintiff must allege and prove product was expected to and did reach user without substantial change in condition).

Potter v. Chicago Pneumatic Tool Co., 241 Conn. 235-236. It is only after the plaintiff has made this initial showing that it is incumbent upon the defendant to assert the alteration or modification defense. Id.

> If the defense is invoked, then the plaintiff must disprove the alleged substantial change. *Southwire Co.* v. *Beloit Eastern Corp.*, supra, 370 F.Sup. 857....At all times, however, the ultimate burden of persuasion (or, put another way, the risk of nonpersuasion) that the product reached the ultimate consumer without substantial change remains with the plaintiff. *E&S Fuel, Inc.* v. *Clark Equipment Co.,* 552 F.Sup. 340, 345-46 (E.D. Ky. 1982); *Southwire Co.* v. *Beloit Eastern Corp.*, supra, 857-58.

Potter v. Chicago Pneumatic Tool Co., 241 Conn. 236-237.

---

(b) For the purposes of this section, alteration or modification includes changes in the design, formula, function or use of the product from that originally designed, tested or intended by the product seller.

The plaintiff alleges in his complaint that "The snow thrower was expected to, and did, reach the user or consumer in substantially the same condition it was in when sold by the defendant." (See plaintiff's Complaint, First Count, ¶9.)  This allegation is contradicted, however, by the findings made by the experts at the March 27, 2003 and June 5, 2003 product inspections.  Both the plaintiff's expert Leslie Wilder, and the defendant's expert Dan Martens, found numerous product alterations, including an improperly routed auger belt that directly affected the ability of the auger clutch to control the movement of the auger and the impeller.  Even more importantly, they found that with the auger clutch control lever released, this misrouted belt permitted the impeller and auger to "sporadically rotate, either gradually for a period of seconds, or rapidly in short bursts of motion." (See Mr. Wilder's expert report, **Exhibit B**, at p.3.) This is the precise scenario that plaintiff's expert Mr. Wilder opines resulted in Mr. Shertukde's injury, although Mr. Wilder attributes its cause to some other unknown mechanical conditions of unknown origin.  (**Exhibit C**, at pp.113-114.)

There is no direct evidence to support Mr. Wilder's assumption that the belt was properly routed at the time of the accident.  Mr. Wilder concedes in his report that the colder temperatures existing on the date of the accident may have permitted the snow thrower to function even in this altered condition.  "Certainly the temperature was much warmer at the time of the inspection, than at the time of the injury, and it is possible that with the belt stiffer due to cold it might have been able to drive the

11

impeller to some degree." (**Exhibit B**, at p.4.)  Moreover, Mr. Wilder's assumption that the belt was intentionally misrouted by the "positive act" of someone after the accident is directly contrary to the sworn testimony of both Mr. Shertukde and his wife.  Mr. Shertukde testified that neither he nor anyone else in his family has used the snow thrower since the time of the accident.  He testified:

> Q: Did you continue to use the snow thrower for the next winter season?
>
> A: Never used it since the accident, scared of it.
>
> Q: So you never used that snow thrower since the date of the accident?
>
> A: That's correct.  I have not touched it, no.
>
> Q: To your knowledge, has anyone else in your family used that snow thrower since the date of the accident?
>
> A: Nobody's used it.
>
> Q: Would you be in a position to know if someone uses it?
>
> A: Yes.
>
> Q: It's your understanding and belief that no one's used that machine since the time of the accident?
>
> A. That's correct.

(See Mr. Shertukde's deposition, **Exhibit A**, at pp.102-103.)  Mr. Shertukde told the same thing to his expert, Mr. Wilder, at the time of the initial March 27, 2003 inspection.  Mr. Wilder related the following:

12

> Q: Did you have occasion to discuss with Mr. Shertukde what, if anything, had happened to the snow thrower between the date of the accident and the date of your inspection?
>
> A: I had asked him that. And he said nothing had happened. He had not used it and nothing had been done to it.
>
> Q: So Mr. Shertukde told you since the date of the accident he had never used the snow thrower?
>
> A: I believe he said that no one had used it.
>
> Q: Okay. And he told you that nothing had happened to it, no changes had been made?
>
> A: Yes. That is my recollection.

(See Mr. Wilder's deposition, **Exhibit C**, at p.41.)

Mr. Shertukde made the same representation to his attorney. On May 14, 2002, plaintiff's counsel Gerald Sack stated in a letter to the defendant, "We have checked with Mr. Shertukde. There has been no change in the condition of the snow thrower since the incident." (See May 14, 2002 letter from Attorney Sack, **Exhibit G** to Local Rule 56(a)1 Statement.)

The plaintiff's wife, Rekha Shertukde, gave similar sworn testimony that neither her husband nor anyone else ever used the snow thrower again after the accident.

> Q: To your knowledge did you husband ever use the snow thrower again at any time after the accident?
>
> A: No, he didn't. I didn't see him use it.
>
> Q: Do you know if he used it sometime when you weren't around?

13

> A: I would come to know because it would be there in between the cars but it was not there.
>
> Q: So, as far as you know he never used it again?
>
> A: No.
>
> Q: Is that no he didn't use it?
>
> A: No, he didn't use it.
>
> Q: And as far as you know did anyone else in your family ever use that snow thrower again after the accident?
>
> A: No, nobody used it.
>
> Q: And as far as you know, did anyone do any mechanical work on the snow thrower after the accident?
>
> A: No.

(See Rekha Shertukde deposition, **Exhibit H** to Local Rule 56(a)1 Statement, at pp.59-60.)

If the testimony of Mr. Shertukde and his wife is accurate, then the altered condition of the snow thrower discovered at the joint inspection represents its condition at the time of the accident. If their testimony is not accurate, then the plaintiff has produced no evidence to "disprove the alleged substantial change." Potter, 241 Conn. 236.

There is undisputed evidence of a substantial change in the auger clutch control system on the snow thrower that caused the auger and impeller to move sporadically

with the clutch control lever released. The defendant has asserted a defense of product alteration. The plaintiff has produced no evidence to demonstrate that this fourteen-year-old snow thrower was in substantially the same condition at the time of the accident on February 6, 2001 as it was at time of manufacture and sale in 1987. As such, plaintiff has failed to establish a prima facie case for product defect, and the defendant is entitled to judgment as a matter of law.

### III.  CONCLUSION:

The defendant submits that the plaintiff has failed to establish a prima facie case by demonstrating that the product was intended to and did reach the ultimate consumer without substantial change in condition. For the reasons set forth above, the defendant is entitled to judgment as a matter of law.

           DEFENDANT,
           MTD PRODUCTS, INC.


           By_____/s/ John J. Bogdanski_____
             John J. Bogdanski
             Howd & Ludorf
             65 Wethersfield Avenue
             Hartford, CT  06114
             (860) 249-1361
             (860) 249-7665 (Fax)
             ct06217

## CERTIFICATION

        This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 29th day of March, 2004.

Gerald S. Sack, Esquire
Marc H. Vidone, Esquire
Sack, Spector & Karsten
836 Farmington Avenue
West Hartford, CT 06119

David W. Herrington, Esquire
Wegman, Hessler, Vanderburg & O'Toole
6055 Rockside Woods Blvd., Suite 200
Cleveland, OH  44131

                                                      /s/ John J. Bogdanski
                                                  John J. Bogdanski