UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HEMCHANDRA SHERTUKDE | : | NO.: 3:02CV620 (MRK) |
| v. | : | |
| MTD PRODUCTS, INC. | : | MARCH 29, 2004 |

**LOCAL RULE 56(a)1 STATEMENT**

The defendant, MTD Products, Inc., hereby submits its Local Rule 56(a)1 Statement, with **Exhibit A** through **Exhibit K**, in support of its Motion for Summary Judgment, Motion in Limine to Preclude Evidence of Proposed Alternative Design, and Motion in Limine to Preclude Non-Disclosed Expert Opinions and Evidence of Subsequent Snow Thrower Design.

1. The subject snow thrower was manufactured and distributed by the defendant MTD Products, Inc. in 1987.

2. Mr. Shertukde purchased the snow thrower new in 1989, and used it to clean snow from his driveway. (Mr. Shertukde's deposition, **Exhibit A**, at pp.39-40.)

3. Mr. Shertukde was the only person to ever use the snow thrower. (Mr. Shertukde's deposition, **Exhibit A**, at p.51.)

4.	Other than occasionally being hard to start, Mr. Shertukde used the snow thrower for twelve years without any problems or incidents.  (Mr. Shertukde's deposition, **Exhibit A**, at p.57.)

5.	Mr. Shertukde does not know how the condition of the snow thrower on the date of the accident compares to its condition on the date of its manufacture and sale fourteen years earlier.  (Mr. Shertukde's deposition, **Exhibit A**, at p.145.)

6.	On February 6, 2001, Mr. Shertukde was using the snow thrower to clear his driveway when the discharge chute clogged with snow.  (Mr. Shertukde's deposition, **Exhibit A**, at p.77.)

7.	Mr. Shertukde released the auger clutch control lever, and observed that this caused the auger to stop turning.  (Mr. Shertukde's deposition, **Exhibit A**, at p.77.)

8.	On prior occasions when snow clogged in the discharge chute, Mr. Shertukde always used a stick to clear the clogged snow.  (Mr. Shertukde's deposition, **Exhibit A**, at p.60.)

9.	On this day, however, Mr. Shertukde decided to use his hand to clear the discharge chute.  (Mr. Shertukde's deposition, **Exhibit A**, at p.80.)

10.	On prior occasions, Mr. Shertukde had always turned off the engine before attempting to clear clogged snow from the discharge chute.  (Mr. Shertukde's deposition, **Exhibit A**, at p.60.)

11. On this day, however, Mr. Shertukde left the engine running when he put his hand into the discharge chute. (Mr. Shertukde's deposition, **Exhibit A**, at pp.89-90.)

12. As he cleared out the clogged snow, Mr. Shertukde claims that his hand "got stuck inside the chute." (Mr. Shertukde's deposition, **Exhibit A**, at p.90.)

13. He testified, "It got jammed in. It got held by something else inside." (Mr. Shertukde's deposition, **Exhibit A**, at p.90.)

14. When the injury occurred, the engine was still running, and Mr. Shertukde observed that the auger blades and shafts were not rotating. (Mr. Shertukde's deposition, **Exhibit A**, at p.90-91.)

15. Mr. Shertukde pulled his hand from the discharge chute, and observed that the tip of one finger was missing. (Mr. Shertukde's deposition, **Exhibit A**, at p.92.)

16. Other than Mr. Shertukde, there were no witnesses to this accident. (Mr. Shertukde's deposition, **Exhibit A**, at p.117.)

17. Mr. Shertukde has "no idea" what caused this accident. (Mr. Shertukde's deposition, **Exhibit A**, at p.101.)

18. He does not know what part or component of the snow thrower caused his injury. (Mr. Shertukde's deposition, **Exhibit A**, at p.114.)

19. As far as Mr. Shertukde knows, none of the snow thrower components were moving or rotating from the time that he first placed his hand into the discharge

chute up to the time the injury occurred. (Mr. Shertukde's deposition, **Exhibit A**, at p.114.)

20. Mr. Shertukde observed no damage to the snow thrower at the time of the accident. (Mr. Shertukde's deposition, **Exhibit A**, at p.106.)

21. According to Mr. Shertukde, after the date of the accident the snow thrower was never used again either by him or by anyone else in his family. (Mr. Shertukde's deposition, **Exhibit A**, at pp.102-103.)

22. Mr. Shertukde never attempted to repair or fix the snow thrower, and never made any changes to it. (Mr. Shertukde's deposition, **Exhibit A**, at pp.104-105.)

23. Mr. Shertukde had the snow thrower serviced once after the accident in January of 2002. (Mr. Shertukde's deposition, **Exhibit A**, at p.105.)

24. Other than that, the snow thrower remained in Mr. Shertukde's garage or in his shed, and was not used. (Mr. Shertukde's deposition, **Exhibit A**, at p.105.)

25. Plaintiff's expert, Leslie Wilder, initially inspected the snow thrower at plaintiff's residence on March 27, 2003. (Expert report of Leslie Wilder, **Exhibit B**, at p.3.)

26. At the time of the March 27, 2003 inspection, Mr. Shertukde told Mr. Wilder that no one had used the snow thrower since the date of the accident, and that no changes had been made to the machine. (Deposition of Leslie Wilder, **Exhibit C**, at p.41.)

27. Mr. Wilder observed that "both the auger and drive cable adjustments were not as specified by the owner's manual, but were overly slack." (Wilder Report, **Exhibit B**, at p.3.)

28. Mr. Wilder found that "Pulling on the starter cord did not cause the impeller or auger to rotate even when the operator hand lever control was held down." (Wilder Report, **Exhibit B**, at p.3.)

29. Mr. Wilder also observed that "an auger drive idler pulley mounted inside the auger housing had partially cut its way through the right rear wall of the housing." (Wilder Report, **Exhibit B**, at p.3; see also, photograph of pulley through auger housing, attached as **Exhibit D**.)

30. At the June 5, 2003 inspection, plaintiff's expert Mr. Wilder found that "actuating the auger control lever did not cause the impeller and auger to rotate." (Wilder Report, **Exhibit B**, at p.3.)

31. He further noted that "the impeller and auger would sporadically rotate, either gradually for a period of seconds, or rapidly in short bursts of motion." (Wilder Report, **Exhibit B**, at p.3.)

32. Mr. Wilder found that the cause of this sporadic movement was the misrouting of the auger belt. "This is why sporadic rotation occurred with the lever released but not when the lever was actuated." (Wilder Report, **Exhibit B**, at p.4.)

33. Mr. Wilder concluded that "In this observed condition, it is doubtful that the snow thrower could function to clear snow." (Wilder Report, **Exhibit B**, at p.4.)

34. When the snow thrower was disassembled, they found that the auger control belt was frayed and worn. (See photograph of frayed and worn auger control belt, **Exhibit E**.)

35. The defendant's expert Mr. Martens found that "the condition of the machine at the time of my inspection revealed that the auger clutch lever would not engage the augers or impeller ('fan assembly')." (Expert report of Daniel Martens, **Exhibit F**, pp.7-8.)

36. Mr. Martens reported, "Upon further inspection of the auger drive system, I found that the auger clutch ("fan") belt (Part #754-0282) at some point had been removed and reinstalled incorrectly; this condition would not allow the augers and impeller ("fan assembly") to engage." (Martens Report, **Exhibit F**, pp.7-8.)

37. He concluded that, "In my opinion, the current condition of the subject snow thrower has changed dramatically from its original design and manufacture." (Martens Report, **Exhibit F**, p.8.)

38. Plaintiff's expert Mr. Wilder testified that the misrouted belt affected the ability of the auger clutch control lever to perform its function of controlling the movement of the auger and impeller. (Wilder Deposition, **Exhibit C**, at p.103-104.)

39. He agreed that this condition most probably arose after the date of the product's manufacture and sale in 1987. (Wilder Deposition, **Exhibit C**, at pp.103-104.)

40. Mr. Wilder said that it was unlikely that belt could move on its own from a position of proper routing to the position of improper routing in which he found it. He testified, "I would say somebody moved it." (Wilder Deposition, **Exhibit C**, at p.130.)

41. Mr. Wilder agreed that it would take a positive act by someone to move the belt from its properly routed position. (Wilder Deposition, **Exhibit C**, at pp.130-131.)

42. Mr. Wilder does not know when, why or by whom this auger belt was misrouted from its design location. (Wilder Deposition, **Exhibit C**, at pp.104-105.)

43. Because he doubts that the machine could have operated in the manner described by Mr. Shertukde with the auger belt at this misrouted location, Mr. Wilder assumes that the belt was properly positioned at the time of the accident and inexplicably was changed at some later date. (Wilder Report, **Exhibit B**, at p.4.)

44. Premised on this assumption that the auger belt was properly routed at the time of the accident, Mr. Wilder then opines that some *other* unknown set of mechanical conditions existed at the time of the accident which permitted the auger and impeller to move with the auger clutch control lever in its released position. (Wilder Deposition, **Exhibit C**, at pp.113-114.)

45. Mr. Wilder cannot identify what those other, unknown mechanical conditions were. He cannot say why those mechanical conditions occurred or when they came into existence. (Wilder Deposition, **Exhibit C**, at pp.113-114.)

46. Mr. Wilder cannot offer an opinion that these other unknown mechanical conditions existed at the time of the product's manufacture and sale in 1987. (Wilder Deposition, **Exhibit C**, at p.114.)

47. In a letter dated May 14, 2002, plaintiff's counsel Gerald Sack stated in a letter to the defendant, "We have checked with Mr. Shertukde. There has been no change in the condition of the snow thrower since the incident." (See May 14, 2002 letter from Attorney Sack, **Exhibit G**.)

47. The plaintiff's wife, Rekha Shertukde, gave sworn testimony that neither her husband nor anyone else ever used the snow thrower again after the accident. (See Rekha Shertukde deposition, **Exhibit H** at pp.59.60.)

48. Mr. Wilder offers the opinion that the subject snow thrower was defective because it did not have a positive mechanical lock to prevent rotation of the impeller. (Wilder Report, **Exhibit B**, at pp.6-7.)

49. Mr. Wilder admitted that the alternative design he suggests is merely a concept he had thought about, and not an actual feasible design alternative derived through the scientific method. (Wilder Deposition, **Exhibit C**, at pp.153-154.)

50. Mr. Wilder was unable and unwilling to even attempt to draw a picture of his design alternative. (Wilder Deposition, **Exhibit C**, at p.155.)

51. Mr. Wilder is not aware of any technical or scientific publications that discuss applying this design alternative to a snow thrower. (Wilder Deposition, **Exhibit C**, at p.156.)

52. Mr. Wilder is not aware of any competitor's snow thrower products that employ the positive mechanical lock design that he proposes. (Wilder Deposition, **Exhibit C**, at p.156.)

53. Mr. Wilder admits that it would take experimentation and scientific testing by a competent engineer to convert his concept into an actual alternative design. (Wilder Deposition, **Exhibit C**, at p.156.)

54. Even if the snow thrower did incorporate his proposed positive mechanical lock, Mr. Wilder concedes that the operator still would be exposed to a risk of injury if he were to place his hand into the discharge chute with engine running. (Wilder Deposition, **Exhibit C**, at p.161.)

55. Based on his limited analysis, Mr. Wilder can only opine that some unknown set of mechanical conditions existed at the time of the accident which, he believes, permitted the auger and impeller to move while the auger clutch control lever was in its released position. (Wilder Deposition, **Exhibit C**, at pp.113-114.)

56. Mr. Wilder is not able to identify what those unknown mechanical conditions were, and cannot say why they occurred or when they came into existence. (Wilder Deposition, **Exhibit C**, at pp.113-114.)

57. On July 11, 2003, the plaintiff disclosed Leslie N. Wilder, P.E., as an engineering expert. (See Plaintiff's Supplemental Disclosure of Expert, attached hereto as **Exhibit I**.)

58. At his deposition December 3, 2003, Mr. Wilder testified that his July 2, 2003 report set forth all of the opinions and conclusions which he has reached in this case, that these were his final trial opinions, and that he did not intend to undertake any further work unless specifically requested to do so by plaintiff's counsel. (Wilder Deposition, **Exhibit C**, at pp.18-19.)

59. Subsequent to his deposition, in a letter dated December 23, 2003, Mr. Wilder also stated that he had done some additional work in the case, and had identified certain aspects that he felt "should be more fully explored." (See Mr. Wilder's December 23, 2003 letter, **Exhibit J**.)

60. In response to Mr. Wilder's letter, the defendant requested that the plaintiff advise immediately if the plaintiff intends to have Mr. Wilder do any additional work to address these new design concepts. (See January 6, 2004 Letter to Attorney Vidone, **Exhibit K**.)

61. The plaintiff never advised the defendant that he authorized his expert to undertake this additional work suggested in Mr. Wilder's letter of December 23, 2003, and never supplemented Mr. Wilder's expert report or expert disclosure to identify these subjects as new or additional trial opinions.

DEFENDANT,
MTD PRODUCTS, INC.

By\_\_\_\_\_/s/ John J. Bogdanski\_\_\_\_
John J. Bogdanski
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT  06114
(860) 249-1361
(860) 249-7665 (Fax)
ct06217

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 29th day of March, 2004.

Gerald S. Sack, Esquire
Marc H. Vidone, Esquire
Sack, Spector & Karsten
836 Farmington Avenue
West Hartford, CT 06119

David W. Herrington, Esquire
Wegman, Hessler, Vanderburg & O'Toole
6055 Rockside Woods Blvd., Suite 200
Cleveland, OH  44131

                                                        /s/ John J. Bogdanski
                                                   John J. Bogdanski