Exhibit B



DEFENDANT'S
EXHIBIT
9
12-23-03

<u>Date:</u>     July 2, 2003

<u>To:</u>     Marc H. Vidone, Esq.
Sack, Spector and Karsten, LLP
836 Farmington Avenue
West Hartford, CT 06119-1544

<u>From:</u>     Leslie N. Wilder, P.E.
Sabon Industries, Inc.
150 Jennie Lane
Fairfield, CT 06824

<u>Subject:</u>     Shertukde vs. Yard-Man

## A. Summary of Investigation:

At your request, I have reviewed the information provided to me regarding Mr. Hemchandra Shertukde's accidental injury involving a Yard-Man snow thrower.  This is a preliminary report summarizing my investigation, and is based upon the following:

1. A meeting with Mr. Shertukde and an inspection of the subject Yard-Man snow thrower in Simsbury Connecticut on February 27, 2003
2. An inspection of the snow thrower in Fairfield Connecticut on June 5, 2003
3. Review of a copy of the subject snow thrower operator's manual
4. Black and white copies of 32 photos of the machine.
5. Review of American National Standards Institute (ANSI) Safety Specifications for Snow Throwers B71.3 –1984
6. Simsbury Ambulance and Hartford Hospital reports dated 2/6/01

Based upon this investigation, it is my conclusion that a proximate cause of Mr. Shertukde's injury was the defective design of the snow thrower, which failed to meet the relevant ANSI standard for such machines.

This report, and the opinions, conclusions and recommendations reached are based upon the information received by the writer to this date, and may be subject to modification should new or additional pertinent information be received.

It is only to be used in connection with actual or potential litigation associated with this incident, and may not be used by other than the addressee.  All rights are reserved by Leslie N. Wilder, P.E. and Sabon Industries, Inc.

## A. Background:

Mr. Hemchandra Shertukde of 11 Windham Drive, Simsbury, Connecticut stated that he purchased the subject Yard-Man snow thrower new in the 1987-9 time frame from S&S, an equipment dealer in Hartford, Connecticut, and used it over the years for home use for clearing snow from the driveways at both his former home in Windsor and his present home in Simsbury, Connecticut.

He stated that on February 6 2001, at about 8:30-8:45 A.M. he began clearing his driveway which was covered with approximately 26 inches of wet snow. At the end of the driveway, the street plow had created a bank of snow, and at this point, the discharge chute clogged with snow. According to the then 47-year old plaintiff, he released both auger and traction control levers, left the engine running, and walked back to his garage, to get something to clear the chute with. He returned empty-handed, and attempted to clear the snow from the chute with his gloved right hand. In the process, he received injuries to his hand including the amputation of his ring finger by the impeller.

Mr. Shertukde stated that he did not shut the engine off because he believed that releasing the control levers would stop the auger, and he looked to see that the auger was no longer turning before attempting to clear the discharge chute area.

## B. Design of the Snow Blower - General:

The snow blower has two basic mechanical systems. The traction, or drive system rotates the wheels, which propels the unit along the ground. The snow moving system consists of the auger, a screw-like device which is thrust into the snow and which transports the snow to the impeller (also called the fan, or blower), which spins rapidly, and which ejects ("throws") the snow through a discharge chute and deflector guide means. The chute may be adjusted by the user to throw the snow in a desired direction. "V" belts and pulleys, to be further described, transmit engine power to both the drive wheels and the impeller and auger.

The auger is controlled by a hand lever mounted to the left handlebar. When depressed, a belt drive is engaged, causing the impeller and auger to rotate. Upon release, the drive belt is slackened, and at the same time, a brake shoe, or frictional pad is contacts the impeller drive pulley to retard and stop the free rotation of the blower and auger.

The proper operation of this system requires that the mechanical connections between the auger drive control lever on the machine's handlebar, and the idler pulley arm be such that the auger drive belt is sufficiently tightened when the drive lever is engaged so that the auger is rotated by the engine, and slackened to allow the belt to not be driven when the control lever is released.

## C. Inspection Findings:

The subject machine is a two-stage, 24-inch cut width, self-propelled walk-behind snow thrower (5-speed forward, neutral and reverse), powered by a single cylinder 5 horsepower Tecumseh gasoline engine. The tires were equipped with chains, and both axles were in the fully locked position. The sheet metal front panel of the machine is marked " Yard-Man 5HP - 24" Twin Thrust" and the front of the auger

Shertukde vs. Yard-Man                    - p 2 -                    L.N. Wilder, P.E.

housing is marked "SnoWolf." A label on the auger housing is marked Serial Number 21-032-2080, and a chassis label is marked "Lot/Model Mfg. Date 31353-8/J057B, Yard-Man Cleveland, Ohio 44136." It is my understanding that this code denotes a manufacturing date of October 1987. Various operator warning labels, including one indicating conformance with ANSI B71.3-1984 were affixed to the machine. In addition, there was a Tecumseh Master Service Dealer label with the name Bloomfield Ace Hardware of Bloomfield Connecticut on the engine. Mr. Shertukde indicated that he had the machine serviced by that facility once in the past for a general tune-up and the repair of a hard starting problem. He indicated that after moving to Simsbury, he had the machine serviced twice by Mr. Jim Meyers of Four Seasons Small Equipment Repair, telephone 860 653 1977, also because of hard starting problems.

When inspected on 2/27/03, a very cold day, the engine could not be started, and only a visual inspection was made. It was noted that both the auger and drive cable adjustments were not as specified by the owner's manual, but were overly slack. Pulling on the starter cord did not cause the impeller or auger to rotate even when the operator hand lever control was held down. It was also noted that what later was found to be an auger drive idler pulley mounted inside the auger housing had partially cut its way through the right rear wall of the housing.

On June 5, a joint inspection of the machine was made in Fairfield, Connecticut, by both this investigator and by representatives of the manufacturer, MTD. At this inspection, the machine's gasoline tank and gas lines were flushed and blown out, and refilled with fresh gasoline, after which the machine was able to be started. However, the throttle response was marginal, with the machine's maximum speed generally running approximately 900-1200 revolutions per minute (RPM) as compared with an expected rate of over 3000 RPM.

During this inspection, it was found although the shift lever was misaligned so that the position of the lever did not line up properly with the panel detent positions, the machine could be driven forward and backward. However, actuating the auger control lever did not cause the impeller and auger to rotate.

The machine was run for at least 15 minutes at approximately 1200 RPM, with both drive levers released. It was noted that the impeller and auger would sporadically rotate, either gradually for a period of seconds, or rapidly in short bursts of motion.

The snow blower contains a mechanism to brake the rotation of the impeller pulley when the auger control lever was released. The torque to rotate the impeller was measured and found to be approximately 20 inch-pounds, exceeding the ANSI B73.1 standard requirement of 10 inch-pounds.

71·3

The plastic housing surrounding the belt drives at the engine was removed , and the mechanism visually inspected. As shown on page 22 of the operator's manual, the impeller drive belt normally runs around the engine and impeller pulleys, passing to the right of the idler pulley, so that the idler can be moved to press against the back of the belt when the hand lever is depressed. A stud, or "keeper" attached to a bracket on the idler assembly keeps the belt close to the idler pulley groove. Figures 1(a) and (b) show this in a pictorial manner, as seen from the front of the subject mower. With

Shertukde  vs. Yard-Man                - p 3 -

L.N. Wilder, P.E.

the hand control released, the idler pulley is in its leftmost position, and because the length of the drive belt is such that it is slack around the engine and impeller pulleys as represented in (a), although the engine pulley rotates, the belt is not driven. Not shown in the diagram is the brake pad, which rubs against the impeller pulley when the hand lever is released.

When the hand control is actuated, the idler pulley is moved to the right, as shown in (b). It now presses against the back of the drive belt, causing it to tighten around the engine and impeller drive pulleys. The brake also retracts, and the impeller is driven.

The drive belt, which was in a worn and deteriorated condition, appeared to be marked MTD 754-02?2, with the two last digits not completely legible. As the proper belt number, according to the manual is 754-0282, it is probably the correct belt for the machine. As inspected, the belt was routed so that it encompassed the engine, idler and impeller pulleys, as represented in Figure 1(c) and (d). In actuality, it was slightly slack with the impeller lever released, instead of being taut, as appears in (c). The belt travels around the outside of the idler pulley (at the left side of the idler as represented in the pictorial) and the portion of the belt that goes from the right sides of the engine and impeller pulleys is routed between the keeper stud and the right side of the idler pulley, instead of running directly from the engine pulley to the impeller pulley. Releasing the hand lever causes the idler to move to the left, causing the belt to have less slack than when the lever is actuated, which causes the idler to move to the right. This is why sporadic rotation occurred with the lever released but not when the lever was actuated.

In this observed condition, it is doubtful that the snow thrower could function to clear snow. Certainly the temperature was much warmer at the time of the inspection, than at the time of the injury, and it is possible that with the belt stiffer due to cold it might have been able to drive the impeller to some degree. However, Mr. Shertukde stated that he had been clearing an approximately 26 inches of snow depth just prior to his injury. Therefore, it is more likely that the belt moved from its proper position at the time of his accident, to its observed position on June 5 at or after the time of injury.

Mr. Shertukde stated that he walked to his garage and then returned to the snow thrower just prior to his injury. This clearly took more than 5 seconds. Therefore, if the belt was, as is likely, in its proper position at that time, the injury could only have occurred if the impeller rotated without hand lever actuation well after the ANSI specified 5-second stopping time after release of the hand lever (ANSI B71.3 -- 1984, section 4.2.4). Under such a circumstance, the snow thrower would have been defective and unreasonably dangerous.

## D. Warnings and Instructions:

Both the operational warnings in the manual and the warning decals affixed to the machine speak to the danger of injury from moving parts as shown in the following excerpts:

Page 3 of the Owner's Manual, under Safe Operation Practices for Snow Throwers, under the Operation subheading states:

Shertukde vs. Yard-Man                    - p 4 -

L.N. Wilder, P.E.

1. Do not put hands or feet near rotating parts.  Keep clear of discharge opening at all times.
5. Stop engine whenever you leave the operating position, before unclogging the collector/impeller housing or discharge guide...

Page 13, under Operation/Starting Instructions states:

 **WARNING**

NEVER attempt to clean chute or make any adjustments while engine is running.

There is a warning decal on the upper right hand part of the auger housing, readable from the operator's position, that (in part) states:

WARNING
1. STOP ENGINE BEFORE REMOVING DEBRIS AND SERVICING UNIT.
2. KEEP CLEAR OF IMPELLER WHILE ENGINE IS RUNNING.

This decal also indicates that the manufacturer certifies that the model conforms to the 1984 ANSI B71.3 safety standards.  This decal also contains a warning that is readable from the front of the machine, that states

"DANGER  AVOID INJURY FROM ROTATING AUGER – KEEP HANDS, FEET AND CLOTHING AWAY."  This is accompanied by a pictorial showing a foot in engagement with an auger blade.

There is another warning label mounted to the top surface of the chute deflector that states: "DANGER  SHUT OFF ENGINE BEFORE UNCLOGGING DISCHARGE CHUTE."  This label includes a pictorial of a hand in contact with what appears to be a rotating machine member.

Page 12 of the Owner's Manual Safety Decals shows these latter two warnings.

However, although the proper functioning of the control/impeller mechanical system is vital to the safety of the subject machine, nowhere in the Owner's Manual is there any indication that an internal brake is provided or necessary for the rapid stopping of the auger/impeller, or that the operation of the hand controls and brake should be checked for proper functioning to assure safety.  This assumes that nothing will ever wear out or get out of adjustment, which is unrealistic.  In my opinion, the lack of such a safety check procedure is in and of itself, a product defect.  In fact, the lack of such instructions violates section 6.2 of the ANSI standard (see Section F, below).

Shertukde  vs. Yard-Man                    - p 5 -                         L.N. Wilder, P.E.

**E. Discussion:**

It is foreseeable that clogging will occur, and that at times, the machine must be cleared of snow.  It is also clear that the rotating parts can cause injury.

On page 11 under Controls, the manual states:

AUGER CLUTCH (See figure 20)

The auger clutch is located on the left handle. Squeeze the clutch grip to engage the augers. Release to stop the snow throwing action.

Warnings are not a substitute for a mechanically safe design.  Although the plaintiff used his hand to clear the chute without turning the engine off, from his description of the events, he not only had released the lever, but had checked to ensure that the auger was no longer turning before attempting to clear the chute.  As far as he knew, releasing the control lever stopped the impeller and auger from turning.

And since he had released the control levers and the auger was not rotating, he had no reason to believe that he was in danger from any moving parts.  He also had no reason to suspect that once stopped, the blower could randomly start rotating even with the control lever disengaged.

To avoid rotation of the impeller when the lever is released, the design of this machine depends upon the degree of friction between the drive belt and the drive pulley, the amount of slack in drive belt, and the frictional drag of the brake pad.  If misadjustment, wear, frictional or other conditions become such that after the operator releases the controls, the auger and impeller can continue to turn, or worse, as apparently happened in this instance, might sporadically rotate, a dangerous situation would exist.  A much safer design alternative would provide a positive mechanical lock against impeller rotation when the control lever was released.  It would be technically and economically feasible to accomplish this.

It is foreseeable that snow throwers will occasionally clog and need to be cleared in a snowy environment, where the most readily available implement for clearing is likely to be the user's hand.

But safety considerations dictate that hands should not be used to clear clogged snow from the chute.  Certainly a simple and inexpensive utensil, perhaps similar to a plastic soup ladle, could have been conveniently supplied and perhaps mounted to the machine by the manufacturer for use in clearing such blockages.  This would have made the product both safer and more convenient to use.

**F. Conclusion:**

The subject machine was not designed in such a way to prevent or reduce the likelihood of injury because it neither had a positive impeller stop, nor an implement for clearing the discharge chute under the foreseeable conditions of clogging.

Further, based upon Mr. Shertukde's description of the accident, the impeller had to have rotated well after he released the hand controls. That means that at the time of the injury, the machine did not comply with the section 4.2.4 of the ANSI B71.3 – 1984 standard, which requires impeller rotation to stop within 5 seconds of the release of the control.

In addition, the owner's manual provides no specific instructions or safety checks for the owner to ensure that the machine's impeller control system is working properly and safely. Thus the subject machine also violates section 6.2 of the standard, which requires that written instructions shall be provided for recommended servicing operations to maintain the equipment in safe operating condition.

Therefore, it is my opinion that the design of the subject snow thrower is defective and unreasonably dangerous, and with all reasonable engineering certainty, such defect was a proximate causes of the plaintiff's injury.


*Leslie N. Wilder*

Leslie N. Wilder, P.E.



Engine pulley

Idler Pulley

Impeller Pulley

(a)    correct routing

lever pressed

(b)

(c)    as routed

"keeper"

(d)

Auger Control Released

Auger Control Engaged

Figure 1 - Drive Pictorial

not to scale

Shertukde  vs. Yard-Man          - p 8 -          L.N. Wilder, P.E.