Exhibit F

**MTD**
For A Growing World

MTD Consumer Products
Technical Center
P.O. Box 368022
Cleveland, OH 44136-9722
phone 330.225.7711
fax 330.273.6995

January 20, 2004

John J. Bogdanski, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114-1190

      Re:   <u>Hemchandra Shertukde, et al. vs. MTD Products Inc</u>
            <u>United States District Court</u>
            <u>District of Connecticut</u>
            Date of Accident: February 6, 2001

Dear Mr. Bogdanski:

     At your request, I have completed a preliminary engineering analysis concerning the subject snow thrower used by Mr. Shertukde at the time of his accident and the accident situation. At this time, I have reviewed the following materials:

1. Copy of the Owner's Manual for the Yard-Man 24" Snow Thrower, Model No. 31353-8/J057B, Serial No. 21-032-2080;

2. Copy of the Snow Thrower Specification Sheet (318-353-400) for the subject snow thrower, Model No. 31353-8/J057B, Serial No. 21-032-2080;

3. Numerous part prints for the subject snow thrower;

4. Copy of three MTD Walk-Behind Snow Thrower Audit Reports, the first is for the subject Yard-Man 24" Snow Thrower Model No. 31353-8, dated September 11, 1987, the second is a similar Yard-Man 22" Snow Thrower Model No. 317-340-400, dated September 29, 1986 and the third report is a similar 26" Yard-Man Snow Thrower Model No. 319-383-400, dated August 17, 1988;

5. Plaintiff's Answers to MTD's written discovery, MTD's answers and responses to Plaintiff's written discovery and related documents;

6. Various medical records concerning Mr. Shertukde's accident and injuries;

John J. Bogdanski, Esq.
January 20, 2004
Page 2



7. Deposition transcript of Hemchandra Shertukde, taken July 23, 2003, and Exhibits thereto;

8. Deposition transcript of Rekha Shertukde, taken November 5, 2003, and Exhibits thereto;

9. Copy of a report by Leslie N. Wilder, P.E., dated July 2, 2003;

10. Deposition transcript of Leslie N. Wilder, P.E., taken December 3, 2003, and Exhibits thereto, and Mr. Wilder's letter to Mr. Vidone dated December 23, 2003;

11. Copy of the American National Standard for snow throwers – safety specifications, ANSI B71.3-1984, Approved July 19, 1984;

12. Copy of Leslie N. Wilder's photographs and video of the subject snow thrower taken on June 5, 2003;

13. Copy of my inspection notes, photographs, and video of the subject snow thrower taken on June 5, 2003.

It is my opinion that the snow thrower model in question, at the time of original design and manufacture by MTD Products Inc. (hereinafter "MTD") was safe and suitable for consumer use. It is my opinion that the subject Yard-Man Snow Thrower, Model No. 31353-8/J057B, Serial No. 21-032-2080 involved in this accident was not defective at the time of its original design and manufacture by MTD. Furthermore, the subject snow thrower in question, at the time of original design and manufacture by MTD, complied with all of the applicable provisions of the American National Standard for snow throwers – safety specifications, ANSI B71.3-1984. It is also my opinion that a snow thrower that complies with the provisions of the ANSI B71.3-1984 safety standard is a snow thrower that is safe and suitable for consumer use.

I further believe that the warnings provided with the machine, both by way of labeling on the machine itself and by way of warnings and instructions contained in the Owner's Manual, were sufficient and adequate for their intended purpose. Additionally, it is my opinion that no additional warnings were required for the machine to be defect free at the time of original design and manufacture by MTD. In my opinion, the accident and the resulting injuries would not have occurred if Mr. Shertukde had followed the warnings and instructions provided and exercised reasonable care for his own safety on the day of his injury.

John J. Bogdanski, Esq.
January 20, 2004
Page 3

Affixed to the top of the upper discharge chute is a safety-warning label (#777-6450), which contains a pictorial of a cut finger inside the discharge opening and the following text, which is printed in red, black and white and is read as follows:



# DANGER

### SHUT OFF ENGINE
### BEFORE UNCLOGGING
### DISCHARGE CHUTE.

An additional safety-warning label (#777-7361) is affixed to the auger housing assembly. This label is printed in red, orange, black and white. A pictorial of a foot contacting the augers is depicted along with the following warnings and instructions. In addition, the conformance safety standard seal is also printed on this label:

# WARNING

1. STOP ENGINE BEFORE REMOVING DEBRIS AND SERVICING UNIT.

2. KEEP CLEAR OF IMPELLER WHILE ENGINE IS RUNNING.

3. NEVER DIRECT DISCHARGE AT BYSTANDERS OR WINDOWS OR ALLOW ANYONE IN FRONT OF UNIT.

4. THOROUGHLY INSPECT THE AREA WHERE THE EQUIPMENT IS TO BE USED AND REMOVE ALL DOOR MATS, SLEDS, BOARDS, WIRES AND OTHER FOREIGN OBJECTS.

5. REFER TO OWNERS MANUAL FOR FULL INSTRUCTIONS.

John J. Bogdanski, Esq.
January 20, 2004
Page 4



 **DANGER**

AVOID INJURY FROM ROTAT-
ING AUGER - KEEP HANDS,
FEET AND CLOTHING AWAY.

MODEL CERTIFIED BY MANUFACTURER
CONFORMS TO
ANSI B71.3
1984 SAFETY
STANDARDS

Referring to the Owner's Manual for the snow thrower in question, the cover page states:

"**IMPORTANT**: Read Safety Rules and Instructions Carefully"

Additionally, the following safety warnings and instructions are found in the Safe Operation Practices section of the Owner's Manual (Page 3):

 WARNING

To reduce the potential for any injury, comply with the following safety instructions. Failure to comply with the instructions may result in personal injury.

## SAFE OPERATION PRACTICES FOR SNOW THROWERS

**TRAINING**

1. Read this Owner's manual carefully. Be thoroughly familiar with the controls and proper use of the equipment. Know how to stop the unit and disengage the controls quickly.

JAN 30 '04 14:37

John J. Bogdanski, Esq.
January 20, 2004
Page 5



## PREPARATION

7. Never attempt to make any adjustments while engine is running (except where specifically recommended by manufacturer).

## OPERATION

1. Do not put hands or feet near rotating parts. Keep clear of discharge opening at all times.

5. Stop engine whenever you leave the operating position, before unclogging the collector/impeller housing or discharge guide, and making any repairs, adjustments, or inspections.

6. Take all possible precautions when leaving the unit unattended. Disengage the collector/impeller, shift into neutral, stop the engine, and remove the key.

7. When cleaning, repairing, or inspecting, make certain collector/impeller and all moving parts have stopped. Disconnect spark plug wire and keep away from plug to prevent accidental starting.

Furthermore, additional safety warnings, product labels and instructions are found throughout the Owner's Manual:

## CONTROLS (Pages 10, 11 & 12)

Auger Clutch (See figure 20)
The auger clutch is located on the left handle. Squeeze the clutch grip to engage the augers. Release to stop the snow throwing action.

## TO STOP ENGINE

1. Pull out ignition key to stop engine.

2. Disconnect and ground the spark plug wire against the engine to prevent accidental starting while equipment is unattended.

John J. Bogdanski, Esq.
January 20, 2004
Page 6



   **DANGER**

SHUT OFF ENGINE
BEFORE UNCLOGGING
DISCHARGE CHUTE.

**ADJUSTMENTS** (Page 13)

   **WARNING**

NEVER attempt to clean chute or
make any adjustments while engine
is running.

**AUGER CLUTCH ADJUSTMENT**
To adjust the auger clutch, disconnect the ferrule from the auger bracket as shown in figure 17. Refer to steps 22 and 23 under Assembly Instructions for proper adjustment.

Step 22. (Page 9) The auger clutch grip assembly is located on the left handle. With the clutch grip assembly in the disengaged (raised) position, hook the "z" end of the auger cable into the bottom hole in auger clutch grip assembly as shown in figure 16. The "Z" end hooks toward the outside of the unit.

Step 23. (Page 9) Thread the ferrule (E) onto the end of auger cable until it lines up with the hole in the auger lever (auger lever is in down position and auger clutch grip is released). Place the ferrule through the auger lever. See figure 17.

Mr. Shertukde purchased the subject snow thrower new somewhere around March of 1989 from S&S Equipment Shop in Hartford, Connecticut. When he purchased the subject snow thrower Mr. Shertukde claimed it was fully assembled even though the owner's manual shows that some assembly was required. Mr. Shertukde never owned or operated a snow thrower prior to purchasing the subject snow thrower. Mr. Shertukde read and understood the owner's manual prior to operating it. The only maintenance or repairs he performed was adding or changing the oil and draining the gas at the end of each season. Furthermore, since moving to Simsbury, a gentleman named Jim Meyers from Four Seasons Small Equipment Repair has performed the

John J. Bogdanski, Esq.
January 20, 2004
Page 7



maintenance on the subject snow thrower. Before each use, Mr. Shertukde would visually inspect the machine, then start the machine and verify whether the drive and auger clutches worked properly. He accomplished this by engaging and disengaging both controls. He would then bring the snow thrower to the edge of his garage and engage the auger clutch to see if it would throw snow.

The warnings recited above, common sense and care for one's personal safety were violated in this case. Mr. Shertukde experienced clogging on separate occasions prior to the day of the accident and cleared the clogs in the chute opening by shutting off the engine and using a stick from his garage. On the day of Mr. Shertukde's accident the machine clogged on his first pass near the end of his driveway. He claims that he released both the auger and traction controls and looked at both the discharge chute opening and inside the front opening of the collector housing. According to Mr. Shertukde, the chute was clogged and both the auger and impeller were not moving. Mr. Shertukde then left the engine running and headed back to his garage, but this time he could not locate the stick. He looked in the garage for approximately five to ten minutes for the stick, but could not find it. He then walked back to the machine. Again, Mr. Shertukde verified that both the auger and impeller were still stationary and not rotating. Mr. Shertukde then proceeded to clear the clog with his right hand. Mr. Shertukde claimed that he did not hear or see any moving parts, even up until the time he stuck his hand inside the chute opening and was injured. It is my opinion that Mr. Shertukde injured his hand when he made contact with the rotating impeller while either the auger clutch lever was fully engaged or as it was winding down to stop. It is my opinion that while clearing the chute with his right hand Mr. Shertukde may have checked to see if he unclogged the chute opening by engaging the auger clutch lever with his left hand and either inadvertently kept his left hand on the control while in between his attempts to clear the clog or simply reinserted his right hand into the chute opening just before the impeller came to a complete stop. Common sense would dictate that a person should never attempt to unclog the discharge chute while the engine is running. Mr. Shertukde should have heeded the instructions in the owner's manual and on the machine and shut the engine off prior to unclogging the discharge chute just as he did on the prior occasions.

During the inspection of the subject snow thrower on June 5, 2003, I attempted to verify that all of the warnings and safety features were in place and working properly. Unfortunately, the stopping times of the auger and impeller from full speed to full stop could not be measured based on the condition of the machine during my inspection. In fact, the condition of the machine at the time of my inspection revealed that the auger clutch lever would not engage the augers or impeller ("fan assembly"). I believe that the snow thrower's condition must have changed from the time of the accident to the day of my inspection. In my opinion, a snow thrower in this condition would not be able to throw snow. Upon further inspection of the auger drive system, I found that the auger clutch ("fan") belt (Part #754-0282) at some point had been removed and reinstalled incorrectly; this condition would not allow the augers and impeller ("fan assembly") to engage. In addition, there were a multitude of other problems with this machine as noted in

John J. Bogdanski, Esq.
January 20, 2004
Page 8



my inspection notes; one of those being that the idler pulley had partially worn its way through the belt cover of the auger belt. In my opinion, the current condition of the subject snow thrower has changed dramatically from its original design and manufacture. The 24" Yard-Man Snow Thrower Model No. 31353-8 was originally designed, manufactured and tested by MTD to meet and exceed all of the safety requirements of ANSI B71.3-1984 American National Standard for snow throwers - safety specifications. In my opinion, a machine which meets and exceeds all of the safety requirements of ANSI B71.3-1984 American National Standard for snow throwers - safety specifications, is a machine which is safe and suitable for consumer use.

I have had the opportunity to review the report of Leslie N. Wilder, P.E., as well as a copy of his deposition testimony and I disagree with some of Mr. Wilder's opinions. I also disagree with his alleged design defects. Furthermore, there is no evidence that the impeller rotated without the lever being actuated. In fact, the evidence is the total opposite; Mr. Shertukde stated that he observed the auger and impeller not rotating twice on the day of the accident, before sticking his hand into the discharge chute opening. Further, Mr. Wilder's statement that "the blower could randomly start rotating even with the control lever disengaged" is in no way substantiated by any evidence other than what was observed during our inspection with the auger clutch ("fan") belt being misrouted and reinstalled improperly. However, I do agree with Mr. Wilder's opinion that the machine would not be able to throw 26" of snow in this condition. Furthermore, the poor condition of the machine and the misrouted belt were observed approximately 2 1/3 years after the day of the accident. In my opinion, the machine must have been altered since the day of the accident and I further believe that this machine had continued to be used for quite some time after the accident.

In my experience in the design and manufacturing of snow throwers of all styles, including the subject style snow thrower, I have become familiar with the various characteristics of such a machine. It is my professional opinion that the Yard-Man snow thrower, Model No. 31353-8, provided instructions, warnings and guarding sufficient for the purposes intended. I believe that the cause of the accident was Mr. Shertukde's conduct by sticking his right hand into the discharge opening while the engine was running. I do not believe that any defect existed in the snow thrower as designed and manufactured by MTD or that the snow thrower caused or contributed to the accident and/or injuries experienced by Mr. Shertukde.

All of my opinions expressed above are stated to a reasonable degree of engineering certainty, based upon the information available at this time. Additional information may be developed during the discovery process to allow me to expand on these opinions.

John J. Bogdanski, Esq.
January 20, 2003
Page 9



The conclusions set forth in this report are preliminary at this time. If I am asked to testify, I will be able to expand on the matters set forth in this letter. I may have further comment or opinions after I have had the opportunity to hear the testimony of the Plaintiff, Plaintiff's liability witness, or other witnesses firsthand. I may have additional opinions after I have reviewed the proposed Trial Exhibits. I have not selected all of the Exhibits or demonstrative evidence I intend to utilize at the time of trial. This may include a videotape demonstration of the model snow thrower involved in this matter, including an accident reconstruction.

Very truly yours,

MTD Products Inc.
Daniel J. Martens
Chief Engineer,
Product Development & Safety