Exhibit I

Case 3:02-cv-00620-MRK    Document 41-10    Filed 03/30/2004    Page 1 of 9

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HEMCHANDRA SHERTUKDE, | : | CIVIL ACTION |
| Plaintiff | : | NO. 3:02CV620 (CFD) |
| | : | |
| VS. | : | |
| | : | |
| MTD PRODUCTS, INC., | : | |
| Defendant | : | NOVEMBER 5, 2002 |

### Supplemental Disclosure of Expert

The plaintiff, Hemchandra Shertukde, hereby supplements his Disclosure of Expert dated August 7, 2002 as follows:

**Leslie N. Wilder, P.E.**

Leslie N. Wilder, P.E., Sabon Industries, Inc., 150 Jennie Lane, Fairfield, CT 06824;

Mr. Wilder will testify that a complete inspection of the thrower was attempted on February 27, 2003. However, it was a very cold day, and the engine could not be started. Therefore, a visual inspection was made of the snow thrower. It was noted that both the auger and drive cable adjustments were not as specified by the owner's manual, but were overly slack. Pulling on the starter cord did not cause the impeller or auger to rotate even when the operator hand lever control was held down. It was also noted that what later was found to be an auger

drive idler pulley mounted inside the auger housing had partially cut its way through the right rear wall of the housing.

Mr. Wilder will further testify the snow thrower was again inspected on June 5, 2003. At that time, the machine's gasoline tank and gas lines were flushed and blown out and refilled with fresh gasoline, after which the machine was able to be started. However, the throttle response was marginal, with the machine's maximum speed generally running approximately 900-1200 revolutions per minute (RPM) as compared with an expected rate of over 3000 RMP.

Mr. Wilder will further testify that during this inspection, it was found that although the shift lever was misaligned so that the position of the lever did not line up properly with the panel detent positions, the machine could be driven forward and backward. However, actuating the auger control lever did not cause the impeller and auger to rotate. The machine was run for at least 15 minutes at approximately 1200 RMP, with both drive levers released. It was noted that the impeller and auger would sporadically rotate, either gradually for a period of seconds, or rapidly in short bursts of motion. Mr. Wilder will further testify that the snow blower contains a mechanism to brake the rotation of the impeller pulley when the auger control lever was released. The torque to rotate the impeller was measured and found to be approximately 20 inch-pounds, exceeding the ANSI B73.1 standard requirement of 10 inch-pounds.

Mr. Wilder will further testify that the plastic housing surrounding the belt drives at the engine was removed, and the mechanism was visually inspected. As shown in the operator's manual, the impeller drive belt normally runs around the engine and impeller pulleys, passing to the right of the idler pulley, so that the idler can be moved to press against the back or the belt when the hand lever is depressed. A stud or "keeper" attached to a bracket on the idler assembly keeps the belt close to the idler pulley groove. With the hand control released, the idler pulley is in its leftmost position, and because the length of the drive belt is such that it is slack around the engine and impeller pulleys, although the engine pulley rotates, the belt is not driven. The brake pad also rubs against the impeller pulley when the hand lever is released. When the hand control is actuated, the idler pulley is moved to the right and presses against the back of the drive belt, causing it to tighten around the engine and impeller drive pulleys. The brake also retracts, and the impeller is driven.

Mr. Wilder will further testify that the drive belt, which was in a worn and deteriorated condition, appeared to be marked MTD 754-02?2, with the two last digits not completely legible. As the proper belt number, according to the manual, is 754-0282, it was probably the correct belt for the machine. As inspected, the machine was routed so that it encompassed the engine, idler and impeller pulleys. In actuality, it was slightly slack with the impeller lever released, instead of being taut. The belt travels around the outside of the idler pulley (at the left

side of the idler) and the portion of the belt that goes from the right sides of the engine and impeller pulleys is routed between the keeper stud and the right side of the idler pulley, instead of running directly from the engine pulley to the impeller pulley. Releasing the hand lever causes the idler to move to the left, causing the belt to have less slack than when the lever is actuated, which causes the idler to move to the right. That is why sporadic rotation occurred with the lever released but not when the lever was actuated.

Mr. Wilder will further testify that in the observed condition, it is doubtful that the snow thrower could function to clear snow. The temperature was much warmer at the time of the inspection than at the time of the injury, and it is possible that with the belt stiffer due to cold, it might have been able to drive the impeller to some degree. However, the plaintiff stated that he had been clearing an approximately 26 inches of snow depth just prior to his injury. Therefore, it is more likely that the belt moved from its proper position at the time of the accident to its observed position on June 5 at or after the time of the injury. The plaintiff stated that he walked to his garage and then returned to the snow thrower just prior to his injury, which clearly took more than 5 seconds. Therefore, if the belt was, as is likely, in its proper position at that time, the injury could only have occurred if the impeller rotated without hand lever actuation well after the ANSI specified 5-second stopping time after release of the hand lever. Under such a circumstance, the snow thrower would have been defective and unreasonably dangerous.

Mr. Wilder will further testify that both the operational warnings in the manual and the warning decals affixed to the machine speak to the danger of injury from moving parts. However, although the proper functioning of the control/impeller mechanical system is vital to the safety of the subject machine, nowhere in the Owner's Manual is there any indication that an internal brake is provided or necessary for the rapid stopping of the auger/impeller, or that the operation of the hand controls and brake should be checked for proper functioning to assure safety. This assumes that nothing will ever wear out or get out of adjustment, which is unrealistic. Mr. Wilder will further testify that, in his opinion, the lack of such a safety check procedure is in and of itself a product defect. In fact, the lack of such instructions violates section 6.2 of the ANSI standard.

Mr. Wilder will further testify that it is foreseeable that clogging of the snow thrower will occur and that at times the machine must be cleared of snow. It is also clear that the rotating parts can cause injury. However, warnings are not a substitute for a mechanically safe design. Although the plaintiff used his hand to clear the chute without turning the engine off, from his description of the events, he not only had released the lever, but had checked to ensure that the auger was no longer turning before attempting to clear the chute. As far as he knew, releasing the control lever stopped the impeller and auger from turning. Since he had released the control levers and the auger was not rotating, he had no reason to believe that he was in

danger from any moving parts. He also had no reason to suspect that once stopped, the blower could randomly start rotating even with the control lever disengaged. To avoid rotation of the impeller when the lever is released, the design of this machine depends upon the degree of friction between the drive belt and the drive pulley, the amount of slack in the drive belt, and the frictional drag of the brake pad. If misadjustment, wear, frictional or other conditions become such that after the operator releases the controls, the auger and impeller can continue to turn, or worse, as apparently happened in this instance, might sporadically rotate, a dangerous situation would exist. A much safer design alternative would provide a positive mechanical lock against impeller rotation when the control lever was released. It would be technically and economically feasible to accomplish this.

      Mr. Wilder will further testify that it is foreseeable that snow throwers will occasionally clog and need to be cleared in a snowy environment where the most readily available implement for cleaning is likely to be the user's hand. However, safety considerations dictate that hands should not be used to clear clogged snow from the chute. A simple and inexpensive utensil, perhaps similar to a plastic soup ladle, could have been conveniently supplied and perhaps mounted to the machine by the manufacturer for use in cleaning such blockages. This would have made the product both safer and more convenient to use.

Mr. Wilder will further testify that the subject machine is not designed in such a way to prevent or reduce the likelihood of injury because it neither has a positive impeller stop nor an implement for clearing the discharge chute under the foreseeable conditions of clogging. Further, based upon the plaintiff's description of the accident, the impeller had to have rotated well after he released the hand controls. That means that at the time of the injury, the machine did not comply with section 4.2.4 of the ANSI B713 – 1984 standard which requires impeller rotation to stop within 5 seconds of the release of the control. In addition, the owner's manual provides no specific instructions or safety checks for the owner to ensure that the machine's impeller control system is working properly and safely. Thus, the subject machine also violates section 6.2 of the standard, which requires that written instructions shall be provided for recommended servicing operations to maintain the equipment in safe operating condition.

Mr. Wilder will further testify that based upon his investigation and inspections of the subject snow thrower on February 27, 2003 and June 5, 2003, it is his conclusion that a proximate cause of the plaintiff's injury was the defective design of the snow thrower, which failed to meet the relevant ANSI standard for such machines.

See Mr. Wilder's report dated July 2, 2003 for specific data.

PLAINTIFF: Hemchandra Shertukde

By_____
Gerald S. Sack (#ct05279)
Sack, Spector & Karsten
836 Farmington Avenue
West Hartford, CT 06119
(203) 233-8251
His Attorney

### CERTIFICATION

This is to certify that a copy of the foregoing was mailed on this 11th day of July, 2003, to the following counsel of record:

John J. Bogdanski, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114

David W. Herrington, Esq.
Wegman, Hessler & Vanderburg
6055 Rockside Woods Boulevard
Cleveland, OH 44131-2302

_____
Gerald S. Sack