UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HEMCHANDRA SHERTUKDE | : | NO.: 3:02CV620 (MRK) |
| | : | |
| v. | : | |
| | : | |
| MTD PRODUCTS, INC. | : | MARCH 29, 2004 |

**MOTION IN LIMINE TO PRECLUDE NON-DISCLOSED EXPERT OPINIONS AND EVIDENCE OF SUBSEQUENT SNOW THROWER DESIGN**

I.   **BACKGROUND:**

This is a products liability claim arising from a February 6, 2001, accident involving a Yard-Man snow thrower. The plaintiff Hemchandra Shertukde sustained a partial amputation of the tip of his right ring finger when he placed his hand into the discharge chute of the Yard Man snow thrower with the auger clutch released but with the engine running. The plaintiff claims that certain design defects in the snow thrower caused his injury.

The defendant incorporates herein by reference its Local Rule 56(a)1 Statement of Facts, together with supporting exhibits, **Exhibit A** through **Exhibit K**, which the defendant has submitted in support of its Motion for Summary Judgment, Motion in Limine to Preclude Evidence of Proposed Alternative Design, and Motion in

ORAL ARGUMENT IS REQUESTED

Limine to Preclude Non-Disclosed Expert Opinions and Evidence of Subsequent Snow Thrower Design.

### A.     Mr. Wilder's Disclosed Defect Opinions

On July 8, 2002, plaintiffs produced the July 2, 2003 report of their engineering expert, Leslie Wilder.  (See Wilder Report, **Exhibit B** to Local Rule 56(a)1 Statement.)  On July 11, 2003, the plaintiff disclosed Leslie N. Wilder, P.E., as an engineering expert.[1]  (See Plaintiff's Supplemental Disclosure of Expert, **Exhibit I** to Local Rule 56(a)1 Statement.)  The plaintiff's July 11, 2003 expert disclosure summarizes the opinions set forth in Mr. Wilder's July 2, 2003 report.  As set forth in the supplemental expert disclosure and in Mr. Wilder's report, the plaintiff disclosed that Mr. Wilder would testify that the subject snow thrower was defective because (1) it did not have a positive mechanical lock to prevent rotation of the impeller; (2) it did not come with a utensil, similar to a plastic soup ladle, for clearing blocked snow from the discharge chute; (3) it did not comply with the ANSI B73.1 - 1984 Standard because the impeller rotated more than five seconds after the release of the auger clutch control; and (4) the owner's manual provides no specific instructions or safety checks

---

[1] Although the cover sheet of plaintiff's Supplemental Disclosure of Expert is dated November 5, 2002, the certification page indicates that it was actually mailed on July 11, 2003.

for the owner to ensure that the machine's impeller control system is working properly and safely.  (Wilder Report, **Exhibit B** to Local Rule 56(a)1 Statement, at pp.6-7.)

Although the defendant noticed the deposition of Mr. Wilder to take place on September 23, 2003, the deposition was substantially delayed due to the insistence of the plaintiff and Mr. Wilder that the defendant pay Mr. Wilder *in advance of his deposition* an expert fee of $2,112.  (See plaintiff's November 4, 2003 Motion to Compel Payment of Expert Fees.)  To resolve this dispute, the defendant agreed to tender a check in the amount of $2,112 to Mr. Wilder at the commencement of his deposition, and the deposition went forward on December 3, 2003.

At his deposition of December 3, 2003, Mr. Wilder testified that his July 2, 2003 report set forth all of the opinions and conclusions which he has reached in this case, that these were his final trial opinions, and that he did not intend to undertake any further work unless specifically requested to do so by plaintiff's counsel.  Mr. Wilder testified:

> Q: All right sir, We've marked as Exhibit 9 the report of July 2nd, 2003. Sir, does this set forth all of the opinions and conclusions which you reached in this case?
>
> A: Yes.
>
> ************
>
> Q: Okay.  Sir, are these your final trial opinions?
>
> A: Yes.

>    Q:   At this point in time have you completed your assignment?
>
>    A:   I may be asked to do something else, there may be new information that comes up, but in the absence of that, this is it.
>
>    Q:   At this point in time you feel that you've done everything you've been asked to do?
>
>    A:   Yes.
>
>    Q:   Unless a specific additional request is made of you, you don't intend to do anything further?
>
>    A:   That's correct.

(Wilder Deposition, **Exhibit C** to Local Rule 56(a)1 Statement, at pp.18-19.)

At the conclusion of Mr. Wilder's deposition, arrangements were made to have Mr. Wilder copy his file materials and provide those copies to counsel. On January 5, 2004, plaintiff's counsel forwarded to the defendant a letter from Mr. Wilder to Attorney Mark Vidone transmitting copies of his file exhibits. In that letter, Mr. Wilder stated that he had done some additional work in the case, and had identified certain aspects that he felt "should be more fully explored." (See Mr. Wilder's December 23, 2003 letter, **Exhibit J** to Local Rule 56(a)1 Statement.) Specifically, Mr. Wilder states in his letter that he has now discovered that another manufacturer, Honda, provides a snow cleaning bar that is clipped to their current snowblowers for clearing blockages. Mr. Wilder further states that, whereas he previously opined that a "positive stop" was needed to prevent movement of the auger/impeller, he now thought *it might be*

*possible* to accomplish this with a "mechanical clutch" of the type that Honda uses on some of their lawn mowers.  Finally, Mr. Wilder states in his letter, "Although you have requested that I await your approval before doing further work, and I will do so, I believe this aspect should be more fully explored."

In response to Mr. Wilder's letter, counsel for the defendant sent a letter to Attorney Vidone.  (See January 6, 2004 Letter to Attorney Vidone, **Exhibit K** to Local Rule 56(a)1 Statement.)  In that letter, the defendant requested that the plaintiff advise immediately if the plaintiff intends to have Mr. Wilder do any additional work to address these design concepts and their potential application to the product and accident here at issue.  The defendant further requested that the plaintiff advise immediately if he intends to supplement Mr. Wilder's report and expert disclosure to identify new or additional opinions Mr. Wilder will offer at trial beyond those set forth in his current report and reviewed at his deposition."  (See **Exhibit K**.)  Plaintiff's counsel never responded to that letter.  Specifically, the plaintiff never advised the defendant that he authorized his expert to undertake this additional work suggested in Mr. Wilder's letter.  Moreover, the plaintiff never supplemented Mr. Wilder's expert report or expert disclosure to identify these subjects as new or additional trial opinions.

The defendant now moves, *in limine*, to preclude any evidence or testimony concerning the subjects set forth in Mr. Widler's December 23, 2003 letter, for the reasons that, (1) the plaintiff has not complied with the expert disclosure requirements

of Fed.R.Civ.Pro. Rule 26(a)(2) concerning these new expert opinions; (2) Mr. Wilder's reference to the possible use of a Honda lawn mower clutch as an alternative safer design is an untested and speculative design concept which would mislead and confuse the jury; and (3) evidence of the subsequent Honda "snow cleaning bar" design is irrelevant, misleading and prejudicial, and must be excluded pursuant to Federal Rules of Evidence (FRE) 407 and FRE 403.

## II.    LAW AND ARGUMENT:

### A.    The Plaintiff Has Not Complied With His Obligation To Timely Disclose Expert Opinions On These New Subjects

The plaintiff is required by the federal rules of civil procedure, and by the Scheduling Orders entered by this Court, to make a timely disclosure of any anticipated expert testimony.  A party that intends to offer expert opinion testimony must comply with the expert disclosure requirements of Fed.R.Civ.Pro. Rule 26(a)(2). That rule provides that a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703 or 704 of the Federal Rules of Evidence.  Subsection 26(a)(2)(B) requires that the disclosure be accompanied by a written report, and that the report "shall contain a complete statement of all opinions to be expressed."  Subsection 26(e) requires a party to supplement his disclosure and expert report with new or additional information.

In addition to the Rule 26(a)(2) disclosure requirements, the Court entered multiple Scheduling Orders in this case setting forth specific requirements regarding the plaintiff's disclosure of expert witnesses. The initial Scheduling Order required plaintiff to disclose his trial experts by December 2, 2002. The plaintiff subsequently moved for multiple extensions of that expert disclosure deadline. The plaintiff did not formally disclose Mr. Wilder as a trial expert until July 11, 2003.

Despite the defendant's specific request that he do so, the plaintiff has never supplemented Mr. Wilder's expert disclosure or report to encompass the new design issues suggested by Mr. Wilder in his letter of December 23, 2003. As such, the introduction of evidence or expert testimony pertaining to these new matters would be in violation of the Court's scheduling orders and the federal expert disclosure requirements. The defendant would be unfairly prejudiced by the introduction of this evidence because the plaintiff has failed to provide a proper and timely disclosure of its intention to offer this expert testimony, and has not afforded the defendant an appropriate opportunity to take Mr. Wilder's testimony on these new subjects.

B. **Mr. Wilder's Suggestion Of A Mechanical Clutch Alternative Is A Speculative And Untested Design Hypothesis**

In his December 23, 2003 letter, Mr. Wilder states that "an impeller drive arrangement to disconnect engine power from the impeller and auger *might obviate*

7

*the need for such a positive mechanical lock....*"  (See Mr. Wilder's December 23, 2003 letter, **Exhibit J**.)  He then states, "Such a design *might include the use of a mechanical clutch* to disconnect the impeller from the engine."  (Id.)  He concludes by stating, "I believe this aspect should be more fully explored."  (Id.)

It is obvious from the above language that the "mechanical clutch" suggested by Mr. Wilder is merely a design concept he wants to explore, and is not an actual alterative safer design that Mr. Wilder has determined to be either practical or feasible by application of the scientific method.  As such, evidence of this design concept would be irrelevant, misleading and confusing, and would not assist the trier of fact.  The defendant incorporates herein by reference its memorandum of law in support of its Motion in Limine to Preclude Evidence of Proposed Alternative Design.  For the reasons stated therein, evidence of this speculative design concept also must be excluded.

### C. Evidence Of Subsequent Honda Design Is Irrelevant And Prejudicial And Must Be Excluded Under FRE 407 And 403

One of Mr. Wilder's design defect claims is that the subject 1987 Yard-Man snow thrower should have been equipped with a plastic snow scoop to assist in clearing clogged snow from the discharge chute.  In his December 23, 2003 letter, Mr. Wilder states that he has "documented" that Honda now provides a "snow cleaning

bar" clipped to their snow throwers for cleaning blockages.  (See Mr. Wilder's December 23, 2003 letter, **Exhibit J**.)

The defendant does not dispute that it was technologically feasible to have offered a plastic snow-cleaning device with the subject Yard-Man snow thrower when it manufactured and sold in 1987.  The fact that seventeen years later, Honda now provides a "snow cleaning bar" with its current snow throwers is not relevant to whether the design of the subject snow thrower was defective and unreasonably dangerous when it was manufactured in 1987.

### 1.      **Subsequent Design Evidence Is Excluded By FRE 407**

Subject matter jurisdiction in this case is premised on diversity of citizenship. As such, federal rules apply to procedural matters including the admissibility of evidence.  Heath v. Suzuki Motor Corporation, 126 F.2d 1391, 1396 (11th Cir. 1997) ("[T]he admissibility of evidence is a procedural matter governed by the Federal Rules of Evidence"); accord Wood v. Morbark Industries, Inc., 70 F.3d 1201 (11th Cir. 1995), citing Southern Stone Co. v. Singer, 665 F.2d 698, 701 (5th Cir. Unit B 1982); Garwood v. International Paper Co., 666 F.2d 217, 223 (5th Cir. Unit B 1982).

Federal Rules of Evidence (FRE) 407 governs the admissibility of subsequent remedial measures, including subsequent changes in a product's design.  It provides as follows:

> When after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, or a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

FRE 407.[2]

The Second Circuit has held that FRE 407 applies in all product liability actions, whether founded on negligence or strict liability in tort. In Re Joint E. Dist. & So. Dist. Asbestos Lit., 995 F.2d 343, 345 (2nd Cir. 1993), citing Fish v. Georgia-Pacific Corp., 779 F.2d 836, 839-40 (2nd Cir. 1985) and Cann v Ford Motor Co., 658 F.2d 54, 60 (2nd Cir. 1981). In that decision, the Second Circuit held that the district court's admission of post-accident warnings relating to the defendant's asbestos products was prejudicial error and required a new trial on both liability and damages. "The admission of post-accident corrective measures is a prejudicial error and has been found to require a new trial in other cases." In Re Joint E. Dist. & So. Dist. Asbestos Lit., 995 F.2d at 346.

---

[2] Rule 407 was amended in 1997 to provide that evidence of subsequent remedial measures may not be used to prove "a defect in a product or its design, or that a warning or instruction should have accompanied a product." This amendment adopts the view of the majority of the circuits that have interpreted Rule 407 to apply to products liability actions. See Rule 407 Advisory Committee Notes, 1997 Amendments.

By its plain language, the current version of FRE 407 does not distinguish between subsequent designs undertaken by a defendant and those made by third-parties. The rule simply states that subsequent design changes, irrespective of their origin, are not admissible "to prove negligence, culpable conduct, or a defect in a product, a defect in a product's design, or a need for a warning or instruction." FRE 407.

In the present case, Federal Rule of Evidence 407 bars the introduction of the subsequent Honda "snow cleaning bar" referred to by plaintiffs' expert Mr. Wilder.

### 2. Subsequent Design Evidence Is Irrelevant And Unfairly Prejudicial

While some have questioned whether the policy justifications underlying FRE 407 are furthered by the exclusion of subsequent design changes made by third-parties, the decisions hold that subsequent design evidence by third-parties must be excluded nonetheless because of its minimal relevance and extreme prejudice.

The mere fact that a subsequent design was altered or changed does "not compel the conclusion that the first design was defective." Kelly v. Crown Equipment Co., 970 F.2d 1273, 1278 (3rd Cir. 1992) citing Flaminio, 733 F.2d at 471. The contrary approach "would admit subsequent repairs as evidence that the product was defective even in cases where the manufacturer was simply making further

improvements to an already safe product." <u>Granada Steel</u>, 659 F.2d at 887, citing <u>Werner v. Upjohn Co.</u>, 628 F.2d 848 (4th Cir. 1980) and <u>Hall v. American Steamship Co.</u>, 688 F. 2d 1062, 1067 (6th Cir. 1982).  "[E]vidence of subsequent repair or change has little relevance to whether the product in question was defective at some previous time." <u>Id</u>. at 887.

Evidence of a subsequent altered design simply is not relevant or probative on the issue of whether an earlier design was reasonable at the time of its manufacture. In <u>Grenada Steel Industries v. Alabama Oxygen Co.</u>, 695 F.2d 883 (5th Cir. 1983), the Appellate Court affirmed the exclusion of subsequent design evidence based in part on the public policy considerations underlying FRE 407, but ***"more firmly on the proposition that evidence of subsequent repair or change has little relevance to whether the product in question was defective at some previous time."*** <u>Id</u>. at 887.  The Court noted that arguments both for and against the admissibility of subsequent design evidence are based on unsupported assumptions and little documented evidence.  It recognized that product changes might be made for any number of reasons not related to the safety of the earlier product design.

> A priori judgments concerning why manufacturers do or do not alter their products, made by such dubious experts as judges, lawyers, and law professors, suffer from excessive reliance on logical deduction and surmise without the benefit of evidence of industry practice or economic factors.  It seems to us, with no greater expertise than like-trained lawyers and judges, that changes in design or in manufacturing process might be

> made after an accident for a number of different reasons: simply to avoid another injury, as a sort of admission of error, because a better way has been discovered, or to implement an idea or plan conceived before the accident. The cost of making the change, the acceptance of the altered product in the market place, and whether the change is one of several that can be made contemporaneously might also be considerations.

Id. at 887 - 888.

The speculation and uncertainty as to the basis for a subsequent design change renders this evidence neither relevant nor probative on the reasonableness of the prior design. Any minimal relevance is far outweighed by the danger of unfair prejudice, confusion, and misleading the jury, as well as undue delay and waste of time. As such, subsequent design evidence is properly excluded under FRE 403. The Third Circuit in Granada Steel reasoned as follows:

> We cannot really know why changes are made in industry generally or why a change was made in a particular product in the absence of evidence on the question. Instead, we ought to consider the probative value of such evidence on the point at issue. The real question is whether the product or its design was defective at the time the product was sold. See S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 181 (3d Ed. 1982). The jury's attention should be directed to whether the product was reasonably safe at the time it was manufactured.

Id. at 888.

The Court in Granada Steel recognized that subsequent design evidence improperly diverts the jury's attention from the real issue in a product design case.

***The introduction of evidence about subsequent changes in the product or its design threatens to confuse the jury by diverting its***

> ***attention from whether the product was defective at the relevant time to what was done later.***  Id. at 182 (addressing only product design). Interpreted to require the evidence to focus on the time when the product was sold, Rule 407 would conform to the policy expressed in Rule 403, the exclusion of relevant information if its probative value is substantially outweighed by the danger of confusion.  See 23 C. Wright & K. Graham, supra, §5288, at 144.

Id. at 888.

For the reasons stated above, evidence of the subsequent Honda "snow clearing bar" design must be excluded as irrelevant and prejudicial pursuant to FRE 407, FRE 401 and FRE 403.

### III.   CONCLUSION:

For the reasons set forth above, the defendant requests that the Court preclude any evidence or testimony concerning the subjects set forth in Mr. Widler's December 23, 2003 letter.  The introduction of such evidence would violate the expert disclosure requirements of Fed.R.Civ.Pro. Rule 26(a)(2), evidence of the Honda lawn

mower clutch is an untested and speculative design concept, and evidence of the subsequent Honda "snow cleaning bar" design is irrelevant, misleading and prejudicial.

        DEFENDANT,
        MTD PRODUCTS, INC.


        By_____/s/ John J. Bogdanski_____
        John J. Bogdanski
        Howd & Ludorf
        65 Wethersfield Avenue
        Hartford, CT  06114
        (860) 249-1361
        (860) 249-7665 (Fax)
        ct06217

## **CERTIFICATION**

       This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 29th day of March, 2004.

Gerald S. Sack, Esquire  
Marc H. Vidone, Esquire  
Sack, Spector & Karsten  
836 Farmington Avenue  
West Hartford, CT 06119

David W. Herrington, Esquire  
Wegman, Hessler, Vanderburg & O'Toole  
6055 Rockside Woods Blvd., Suite 200  
Cleveland, OH  44131

                                                                                       /s/ John J. Bogdanski  
                                                                                      John J. Bogdanski